[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12013
_____

D. C. Docket No. 2:10-cr-14029-DLG-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PEDRO DIAZ-CALDERONE,
a.k.a. Pedro Calderone Diaz,
a.k.a. Calderon Pedro
a.k.a. Pedro Diaz,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 23, 2013)

Before DUBINA, Chief Judge, BARKETT and KLEINFELD,* Circuit Judges.

_____

* The Honorable Andrew J. Kleinfeld, Senior United States Circuit Judge for the Ninth Circuit,
sitting by designation.

KLEINFELD, Circuit Judge:

We address whether, in the circumstances of this case, facts alleged in police officers' affidavits established a sufficient basis for a "crime of violence" sentencing enhancement.

## FACTS

Diaz-Calderone's conviction and sentence before us was for being a deported alien found in or having reentered the United States without permission.[1] He received a sentence of 48 months' imprisonment, towards the low end of his guidelines range of 46-57 months.  His guidelines range would have been considerably lower had he not received a sixteen level enhancement for a prior conviction for a "crime of violence."[2]  The question raised in this appeal is

---

[1] 8 U.S.C. § 1326(a), (b)(2).

[2] U.S.S.G. § 2L1.2(b)(1) ("If the defendant previously was deported, or unlawfully remained in the United States, after – (A) a conviction for a felony that is . . . (ii) a crime of violence . . . increase by 16 levels if the conviction receives criminal history points . . . .").

whether the sentencing judge erred when he applied the modified categorical

approach and determined that Diaz-Calderone had committed a prior "crime of

violence" under U.S.S.G. § 2L1.2.[3]

Diaz-Calderone's prior convictions were for a State of Florida crime,

"aggravated battery," consisting of battery upon a pregnant victim whom the

perpetrator knew or should have known was pregnant.[4]  The complication in this

case is that Florida battery, even aggravated battery upon a pregnant woman, need

not be violent.  It can be accomplished merely by an intentional touching against

the victim's will.  Florida courts interpret the aggravated battery upon a pregnant

victim statute to mean that the defendant must 1) commit simple battery 2) upon a

pregnant victim that they knew or should have known was pregnant.[5]  Florida

simple battery "occurs when a person: 1. Actually and intentionally touches or

---

[3] As relevant to this appeal, "crime of violence" means any "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

[4]  Fla. Stat. 784.045(1)(b) ("A person commits aggravated battery if the person who was the victim of the battery was pregnant at the time of the offense and the offender knew or should have known that the victim was pregnant.").

[5] Small v. State, 889 So.2d 862, 863 (Fla. Dist. Ct. App. 2004).

3

strikes another person against the will of the other; or 2. Intentionally causes bodily harm to another person."[6]  Florida courts interpret simple battery to include "any intentional touching, no matter how slight."[7]  Therefore, aggravated battery upon a pregnant woman can be accomplished by 1) intentional touching, including slight contact; 2) striking; or 3) intentionally causing bodily harm.

Conceivably a grandmotherly stranger in a shopping mall or a lady at work might see a pregnant woman, say "oh how adorable, may I feel?" and, without waiting for an answer, touch the pregnant woman's stomach, much to the annoyance of the pregnant woman.  That would be "aggravated battery" under the Florida statute, but not a "crime of violence" under the federal sentencing guidelines.  Thus a Florida conviction for aggravated battery on a pregnant woman is not a categorical crime of violence for sentencing guidelines purposes.  The district court correctly used the modified categorical approach instead.

---

[6] Fla. Stat. 784.03(1)(a).

[7] State v. Hearns, 961 So.2d 211, 218-19 (Fla. 2007).

4

Diaz-Calderone's Florida charge and conviction do not by themselves establish just what he did. He pleaded nolo contendere to two informations, both of which say that he committed aggravated battery, on March 14 and June 16, 2006, on the same pregnant woman. Both informations charged in the disjunctive that he "did intentionally touch or strike [the victim] against that person's will or did intentionally cause bodily harm to said person . . . ."[8] He pleaded nolo contendere and was convicted on his plea. By itself, those facts are consistent with merely touching, which would not be a "crime of violence," as well as possibly striking or causing bodily harm, which would be a "crime of violence."

To support treating the batteries as crimes of violence, the prosecutor in this federal case submitted as exhibits sworn affidavits from police officers describing the events as violent, and not merely unwanted touching.[9] The complaint affidavit by the investigating police officer for the March incident says that the pregnant victim told him that her boyfriend Diaz-Calderone got angry at her because she

---

[8] Emphases added.

[9] These affidavits are apparently routinely used when a Florida police officer arrests someone without a warrant, or makes a criminal complaint. Magistrates and judges look to them to determine wether or not probable cause for prosecution exists. See United States v. Rosales-Bruno, 676 F.3d 1017, 1022 (11th Cir. 2012); Fla. R. Crim. P. 3.133(a)(3).

5

left the car window open when they went into the store, so he hit her in the arm, she hit him back, she got out her cell phone to call the police, and he knocked it out of her hand. He continued hitting her, she took off her shoes and used them to hit him, and he left. The arrest affidavit for the June incident says that the pregnant victim told the police officer that Diaz-Calderone struck her several times in the arm and stomach, when they argued about a recent dance. The officer observed that her stomach was badly bruised.

The district court applied the modified categorical approach, but did not rely on the affidavits themselves for his decision to add the guidelines enhancement for a crime of violence. Instead, the court relied upon statements made in Diaz-Calderone's change of plea proceeding in state court for the two aggravated battery on a pregnant woman cases. The government submitted an audio recording of this plea as an exhibit, and the sentencing judge in this federal case "listened very carefully to the recording." The judge found that in the colloquy, "the defendant assented to the facts which would make this a violent offense" and that defense counsel affirmed that the arrest affidavit provided a factual basis for Diaz-Calderone's plea.

Diaz-Calderone argues that the district court should have determined that

6

Florida aggravated battery was not categorically a crime of violence, and stopped there. He objects to the court's use of the modified categorical approach, and says that the court should not have made any findings based on the arrest affidavit. He argues that since he pleaded nolo contendere to the Florida aggravated batteries, he should be deemed to have admitted nothing, and the plea to have established nothing, about whether they were violent.

## ANALYSIS

"We review de novo whether a defendant's prior conviction qualifies as a 'crime of violence' under the Sentencing Guidelines."[10] We review the district court's findings of fact for clear error.[11] As stated above, the Florida offense of aggravated battery upon a pregnant woman is not categorically a crime of violence. We had held otherwise in United States v. Llanos-Agostadero,[12] but the

---

[10] Rosales-Bruno, 676 F.3d 1017 at 1020 (citation and quotation marks omitted).

[11] See United States v. Cruz, 11th Cir. 2013, __ F.3d__, (Nos. 11–12568, 11–12441, March 26, 2013) ("We review the district court's legal conclusions regarding the Sentencing Guidelines de novo, and its factual findings for clear error.").

[12] United States v. Llanos-Agostadero, 486 F.3d 1194, 1198 (11th Cir. 2007).

Supreme Court's decision in Johnson v. United States[13] overruled Llanos-Agostadero on this point.[14] The court in Llanos-Agostadero based its decision on the understanding that the Florida offense of simple battery was a categorical crime of violence under U.S.S.G. § 2L1.2(b), as it had as an element "the use of physical force."[15] But in Johnson, the Supreme Court held that even a slight touching, such as an unwanted tap on the shoulder, could satisfy the elements of Florida simple battery, and that therefore Florida simple battery did not require the use of physical force.[16] Johnson dealt with the Armed Career Criminal Act's definition of a violent felony, not the sentencing guidelines' definition of a crime of violence. However, United States v. Williams[17] makes clear that this distinction makes no difference.[18]

[13] Johnson v. United States, 130 S. Ct. 1265 (2010).

[14] The 10th and 5th Circuits have held that Florida aggravated battery on a pregnant woman is not a categorical crime of violence. United States v. Barraza-Ramos, 550 F.3d 1246, 1249-51 (10th Cir. 2008); United States v. Gonzalez-Chavez, 432 F.3d 334, 338 (5th Cir. 2005).

[15] Llanos-Agostadero, 486 F.3d at 1196-98.

[16] Johnson, 130 S.Ct. at 1269-71.

[17] United States v. Williams, 609 F.3d 1168 (11th Cir. 2010).

[18] Id. at 1169-70 ("We hold that, in light of the Supreme Court's ruling in Johnson, the fact of a conviction for felony battery on a law enforcement officer in Florida, standing alone, no longer satisfies the 'crime of violence' enhancement criteria as defined under the 'physical force' subdivision of section 4B1.2(a)(1) of the sentencing guidelines. Though the statutory context here varies somewhat from that present in Johnson, we have no reason to believe that the words

8

But Diaz-Calderone is mistaken in arguing that that should be the end of the inquiry, and that the district court should not have used the modified categorical approach in this case. Diaz-Calderone argues that Florida's aggravated battery statute is not ambiguous, and does not have "as an element the use . . . of physical force."[19] He argues that the phrase "different statutory phrases" in United States v. Palomino Garcia,[20] implies a negative pregnant, that in the absence of such "different statutory phrases" there can be no ambiguity justifying application of the modified categorical approach. But because the word "battery" in Florida's aggravated battery upon a pregnant woman statute encompasses a mix of forceful and non-forceful conduct, the statute is ambiguous. The district court was correct to use the modified categorical approach.[21]

---

present in the ACCA have a different meaning than the same words used in the sentencing guidelines.").

[19] U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

[20] United States v. Palomino Garcia, 606 F.3d 1317, 1336 (11th Cir. 2010) ("[W]hen the law under which a defendant has been convicted contains different statutory phrases – some of which require the use of force and some of which do not – the judgment is amgibuous and we apply a 'modified categorical approach.'") (citing Johnson, 130 S. Ct. at 1273).

[21] See Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1339-40 (11th Cir. 2013).

United States v. Rosales-Bruno[22] holds that, like police reports, Florida arrest affidavits cannot be used in the modified categorical inquiry because they do not establish with sufficient certainty the conduct involved in the state crime for the modied categorical approach.[23]  Florida complaint affidavits are not distinguishable from arrest affidavits for this purpose.  Thus the two affidavits about what the victim told investigating police officers cannot, by themselves, establish a predicate for the crime of violence sentencing enhancement.  Such affidavits serve useful purposes, such as determining whether there is probable cause for an arrest or charges, and guiding investigation by prosecutors and defense attorneys, but they do not establish what the convicted defendant did with sufficient certainty for the enhancement.  "We will not rely on the arrest affidavit in making this determination.  Evidence used to determine whether a prior guilty plea supported a conviction for a violent felony must 'be confined to records of the convicting court approaching the certainty of the record of conviction.'"[24]  Witnesses may be mistaken or may lie to the police, police may misunderstand what upset people are trying to tell them, and police reports may tell only part of

---

[22]  Rosales-Bruno, 676 F.3d 1017.

[23]  Id. at 1022.

[24]  Id. (quoting Shepard v. United States, 544 U.S. 13, 23, 125 S. Ct. 1254, 1261 (2005)).

10

the story.

But the district judge in this case did not make the mistake of treating the two affidavits as establishing how Diaz-Calderone committed the two batteries on a pregnant woman.  Nor did the judge treat the nolo contendere plea as though it had been an admission, by itself, of anything at all.   Instead he listened carefully to the change of plea proceedings.   Shepard v. United States[25] and the cases following it allow a sentencing judge engaging in the modified categorical approach to consult a "transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information."[26]  The cases generally refer to the "transcript" of the plea colloquy, and there was no transcript here, but listening to the actual proceedings is even better than reading a transcript.

We have listened to the recording carefully ourselves, on the CD that was admitted as an exhibit.  The state judge, following the Florida rule on acceptance

---

[25] Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254.

[26] Rosales-Bruno, 676 F.3d at 1020 (quoting Shepard, 544 U.S. at 26, 125 S. Ct. at 1263).

11

of a nolo contendere plea,[27] asked Diaz-Calderone whether he was acknowledging his guilt, or choosing to plead nolo contendere because he felt it was in his best interest. After a lengthy discussion with his attorney, Diaz-Calderone said he was guilty. The judge then asked whether the arrest affidavit established a factual basis for the plea, and Diaz-Calderone's attorney said that it did. In the context in which the affidavit was discussed, Diaz-Calderone's answer apparently meant "I did what the affidavit says I did." The district court made a finding of fact, not clearly erroneous, that during his plea colloquy Diaz-Calderone "assented to the facts which would make this a violent offense." A Florida court finding that the offense was committed violently is not needed where the Shepard materials enable the district court to make findings.

True, were the statement "I'm guilty" taken in isolation, it would not necessarily admit violence.[28] And were the concession that the arrest affidavit

---

[27] Fla. R. Crim. P. 3.172(e) ("Before the trial judge accepts a guilty or nolo contendere plea, the judge must determine that the defendant either (1) acknowledges his or her guilt or (2) acknowledges that he or she feels the plea to be in his or her best interest, while maintaining his or her innocence.").

[28] See Rosales-Bruno, 676 F.3d at 1020 (Stating that under the modified categorical approach, "we limit our review to reliable material that allow us to determine whether the particular conviction 'necessarily' rested on a fact establishing the crime as a violent offense.") (quoting Shepard, 544 U.S. at 21, 125 S. Ct. at 1260).

established a factual basis taken in isolation, that too might not necessarily admit violence.   Sometimes the defense concedes that the prosecution's offer of proof would establish a factual basis for the plea even though not admitting anything. The Florida Supreme Court in Williams v. State[29] explained that the "sole purpose" of requiring a factual basis for a plea is

> to determine the accuracy of the plea, thereby avoiding a mistake. The trial judge, under this provision, is to ensure that the facts of the case fit the offense with which the defendant is charged.  The purpose has been more fully expressed in the committee notes to Federal Rule 11 . . . . "Such inquiry should, e.g., protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge[.]" . . . Clearly, the purpose is to avoid a defendant's mistakenly entering a plea of guilty to the wrong offense.[30]

And Florida expressly provides, as stated above, that a defendant may plead nolo contendere because he feels it to be in his best interest even though he does not

---

[29]  Williams v. State, 316 So.2d 267 (Fla. 1975).

[30] Id. at 271-72.

13

admit guilt.[31]  But combining Diaz-Calderone's admission of guilt with counsel's statement that the affidavit established a factual basis for his plea established a sufficient basis for the district court's finding of fact that Diaz-Calderone was indeed admitting that he did what the affidavit said.

Once it is established, as it is, that Diaz-Calderone admitted that the way he committed aggravated battery on a pregnant victim was by striking the victim, as his arrest affidavit says, the case is over.  He committed a prior crime of violence, and the district court properly imposed a sixteen-level sentencing enhancement.

**AFFIRMED.**

---

[31] Fla. R. Crim. P. 3.172(e);  Vinson v. State, 345 So.2d 711, 715 (Fla. 1977) ("A plea of nolo contendere does not admit the allegations of the charge in a technical sense but only says that the defendant does not choose to defend.  It is merely a formal declaration that the accused will not contest the charges with the prosecutor and is in the nature of a compromise between the state and the accused.") (citations omitted).