[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  13-12687

_____

D.C. Docket No. 1:11-cr-00441-TWT-LTW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CALVIN JOHNSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 16, 2014)

Before JORDAN and BENAVIDES,[*] Circuit Judges, and RYSKAMP,[**] District Judge.

PER CURIAM:

---

[*]  Honorable Fortunato P. Benavides, Senior United States Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

[**]  Honorable Kenneth L. Ryskamp, United States District Judge for the Southern District of Florida, sitting by designation.

After a jury trial, Calvin Johnson appeals his conviction and sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Johnson raises five issues on appeal.  First, Johnson argues that the district court erred in denying his motion to suppress evidence found during a parole search, in violation of his Fourth Amendment rights.  Second, Johnson argues that the court erred in permitting testimony about statements he made.  Third, Johnson argues that the court erred in allowing evidence that he was on parole.   Fourth, Johnson argues that the court improperly admitted expert witness testimony.   Finally, Johnson argues that the court imposed a procedurally and substantively unreasonable sentence.  For the reasons set forth below, we affirm.

## I.

This case involves a warrantless search of a parolee's residence and property.  The search was triggered when Johnson violated the conditions of his parole several times, including an arrest for reckless driving and possession of marijuana.  Thereafter, Georgia state parole officers attempted to serve a parole arrest warrant on Johnson at his residence.  Eventually, Johnson's residence and property were searched, and Johnson was subsequently arrested.

The facts surrounding Johnson's parole conditions, search, and arrest are set forth as follows.[1]

## A.    The Terms and Conditions of Johnson's Parole

Following Johnson's release from prison on parole, he met with a parole officer for an initial intake interview. During the meeting, the officer and Johnson reviewed Johnson's Parole Certificate. A condition of the Parole Certificate, entitled, "Law/Immediate Notification of Searches," permitted parole officers to conduct warrantless searches of Johnson's residence and property at any time. The officer explained that condition by stating that, anytime the parolee comes into contact with the police, the parolee and his residence can be searched. Further, the officer gave instances in which officers could search a parolee, such as if the parolee is stopped or questioned, or when an officer has reasonable suspicion. Finally, the officer explained that parolees have no Fourth Amendment rights while on parole.

## B.    The Search of Johnson's Residence

While on parole, Johnson committed several parole violations. Due to such violations, parole officers attempted to execute an arrest warrant on Johnson at his

---

[1] Such facts are taken from the district court's denial of the motion to suppress evidence following the suppression hearing.

residence.[2]   Johnson's sister, mother, and grandmother were at the residence. Johnson's sister informed the officers that Johnson was not home.   With permission, the officers cleared the residence to ensure Johnson was not present. The officers did not locate Johnson.

Having cleared the residence, the officers searched Johnson's bedroom and the garage.   The officers recovered an assault rifle and a magazine loaded with ammunition in Johnson's bedroom and drug paraphernalia in the garage.[3] Johnson's sister, mother, and grandmother informed the officers that the weapon did not belong to any of them.   Thereafter, Johnson's sister contacted Johnson, and the officers instructed Johnson to report to the parole office.

## C.    The Arrest and Interview of Johnson

Johnson reported to the parole office as instructed, where he was taken into custody.   While in custody, the chief parole officer searched Johnson and recovered two cellular telephones.   Subsequently, an agent from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") interviewed Johnson.   The agent identified himself to Johnson as a federal agent with ATF, explained to Johnson that he was not required to answer any questions, and read Johnson his *Miranda*[4]

---

[2] Johnson's parole violations included failure to obtain employment or provide proof of his enrollment in school, electronic-monitoring/curfew violations, and an arrest for reckless driving and possession of marijuana.

[3] During the suppression hearing, the parole officer could not recall specifically where each item was recovered.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

warnings. When the agent inquired whether Johnson understood his rights and was willing to waive such rights, Johnson responded affirmatively to both questions. Thereafter, Johnson answered questions regarding the origins of the assault rifle. Johnson initially denied possession of the assault rifle. However, after the agent asked who else lived in the house, Johnson replied that he would take the charge.

### D.    The Search of Johnson's Cellular Telephone

After the agent questioned Johnson, the chief parole officer searched one of Johnson's cellular telephones. In doing so, the officer found several photographs of Johnson holding an assault rifle that appeared to be the same weapon the officers had recovered from Johnson's residence. Therefore, a federal search warrant was obtained to search Johnson's cellular telephones.

### E.    Trial Testimony

During trial, the government called the parole officers and ATF agent. The officers testified about Johnson's release from parole, including his conditions and supervision, and the search of Johnson's residence and cellular telephone. The ATF agent testified about his interview with Johnson.

Moreover, the government called expert witnesses. The witnesses described the discovery of encrypted jail calls between Johnson and his sister and determined that Johnson had told his sister what to say at trial, including that he had not been

home during the relevant time period and that she was unable to identify who was in the photograph found on the cellular telephone.

Defense counsel called Johnson's sister. His sister testified consistent with Johnson's instructions. However, Johnson's sister did not testify as to whom was depicted in the photographs because she was not asked that question.

Following the testimony and closing arguments, the jury returned a guilty verdict on the sole count of felon in possession of a firearm.

### F.    Sentencing

At sentencing, the district court calculated the guidelines range to be 110-137 months. Over Johnson's objection, the court applied a base offense level of 26 under U.S.S.G. § 2K2.1(a)(1). The court applied the level of 26 by finding that Johnson had committed the instant offense after sustaining two convictions of a crime of violence or a controlled substance offense, namely obstruction of a police officer and possession with intent to distribute marijuana. Additionally, the court added a two-level enhancement for obstruction of justice under U.S.S.G § 3C1.1.

Further, the court heard arguments concerning the 18 U.S.C. § 3553(a) sentencing factors. Johnson requested that the court impose a sentence below his guideline range due to his personal history and circumstances. The government responded that a lenient sentence was inappropriate in light of the nature of Johnson's offense and his criminal history.

After hearing the parties' arguments, the court sentenced Johnson to the statutory maximum of 120 months' imprisonment, followed by three years of supervised release, and a $100 special assessment. The court explained that it had considered the § 3553(a) factors, but the factors weighed in favor of a sentence within the guidelines range and the maximum sentence under the statute. The court further explained that, if any procedural error occurred, the sentence imposed would have been the same because the sentence is fair and reasonable.

This appeal follows.

## II.

We review the district courts' findings of fact on a motion to suppress evidence for clear error and questions of law de novo. *United States v. White*, 593 F.3d 1199, 1202 (11th Cir. 2010). The district court's ruling on the admission of evidence is reviewed for abuse of discretion. *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013) (citation omitted).

We review the district court's legal conclusions regarding the sentencing guidelines de novo and its factual findings for clear error. *United States v. Diaz-Calderone*, 716 F.3d 1345, 1348 (11th Cir. 2013). An improper calculation of the guidelines range constitutes a procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007). If no significant procedural error occurred, "[w]e review the reasonableness of a defendant's sentence under a deferential abuse of discretion

7

standard. *United States v. King*, 751 F.3d 1268, 1281 (11th Cir. 2014) (citation omitted). "In evaluating the reasonableness of a sentence, we measure the sentence against the factors outlined in 18 U.S.C. § 3553(a)." *Id.* (citation and footnote omitted). The weight accorded any specific § 3553(a) factor is committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).

### III.

Johnson first argues that the district court erred in denying his motion to suppress evidence from the search of his residence and cellular telephone because the parole officers lacked reasonable suspicion. Specifically, he claims that reasonable suspicion was required based on a statement made to him during his intake interview by a parole officer.[5] We disagree.

The United States Supreme Court determines whether a search is reasonable within the meaning of the Fourth Amendment by examining the totality of the circumstances. *Samson v. California*, 547 U.S. 843, 848 (2006) (citation omitted). The reasonableness of a search "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* (quotation omitted).

---

[5] Johnson further argues the officers did not have authority to search his residence because it was outside the scope of the arrest warrant. We do not need to address this argument, as the government does not argue that the arrest warrant provided justification to search the residence.

8

In *Samson*, the Supreme Court held that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee when the parolee agrees to be subjected to search at any time as a condition of parole. *Id.* at 857. There, an officer searched the petitioner based solely on his status as a parolee. *Id.* at 846-47. As a condition of the petitioner's release, he had agreed to be subject to searches at any time. *Id.* at 851. The Court examined the petitioner's privacy interests and explained that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment . . . . *Id.* at 850. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* (quotation omitted). The Court further explained that the petitioner's search condition required the petitioner to submit to suspicionless searches by a parole officer or other peace officer at any time. *Id.* at 852. Accordingly, the Court found that the petitioner did not have a reasonable expectation of privacy, given the petitioner's status as a parolee and his acceptance of the parole condition. *Id.* at 852.

Thereafter, the Court found that the state's interests were substantial. *Id.* at 853. Combating recidivism and promoting reintegration into society warrant privacy intrusions. *Id.* Thus, the Court held that "the Fourth Amendment does not

prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 857.

This court has applied the *Samson* analysis to a Georgia parolee and upheld a suspicionless search of a parolee. *See United States v. Stewart*, 213 F. App'x 898 (11th Cir. 2007) (per curiam). In *Stewart*, the defendant argued that the Fourth Amendment requires an officer to have reasonable suspicion to search a parolee. *Id.* at 899. This court held that, because the defendant's "parole certificate required him to submit to a search 'at any time' without a warrant, the search was authorized by the terms of [the defendant's] parole conditions." *Id.* at 899.

Here, the district court properly denied Johnson's motion to suppress evidence from the warrantless searches of his residence and cellular telephone because the parole officers were operating under a Fourth Amendment waiver. Johnson agreed in writing that parole officers may, at any time, conduct warrantless searches of his residence and property as a condition of parole. Johnson elected to complete his sentence out of prison by being subject to the condition. The condition was clearly expressed to Johnson, and he submitted to the condition by signing the Parole Certificate. Given Johnson's status as a parolee and his acceptance of the parole condition, he did not have a reasonable expectation of privacy. *Samson*, 547 U.S. at 852. Furthermore, the State of Georgia has an overwhelming interest in supervising parolees to reduce recidivism

and promote reintegration into society. *Id.* at 853. Accordingly, the district court properly denied Johnson's motion to suppress evidence.[6] *Id.* at 857; *Stewart*, 213 F. App'x at 899.

Although Johnson argues that his intake officer explained to him that an officer could only conduct a search if he had reasonable suspicion, the intake officer testified that she read the Parole Certificate to Johnson, which included that a parole officer may, at any time, conduct a warrantless search. The intake officer never testified that searches require reasonable suspicion. Rather, the officer described to Johnson a few examples where officers could search Johnson's residence, which could include, among others, an instance of reasonable suspicion. Most importantly, the officer explained to Johnson that he had no Fourth Amendment rights while on parole. Thus, the parole officers were not required to have reasonable suspicion for the search of Johnson's residence and cellular telephone.[7]

**IV.**

---

[6] The recent Supreme Court case, *Riley v. California*, 134 S. Ct. 2473 (2014), has no application to the instant case because here Johnson waived his Fourth Amendment rights as a condition of parole.

[7] We note that the Magistrate Judge found reasonable suspicion based on Johnson's multiple parole violations, including the failure to obtain employment, overnight electronic-monitoring violations, and his recent arrest for reckless driving and possession of marijuana. Although we find that reasonable suspicion was not required, nothing herein should be construed as supporting or denying reasonable suspicion.

Johnson's next argument—that the district court erred in permitting testimony about statements made by Johnson—is also without merit. Specifically, Johnson argues that he involuntarily waived his *Miranda* rights because he believed he was being interviewed for electronic-monitoring violations and the ATF agent implicitly threatened that his family would be prosecuted.

In this case, the district court properly admitted Johnson's statements made to the ATF agent. Johnson voluntarily and knowingly waived his *Miranda* rights. The ATF agent explained that he was an ATF agent and that the conditions of Johnson's parole did not require him to answer any questions. The agent read Johnson his *Miranda* rights, and inquired whether Johnson understood and was willing to waive his rights. Johnson responded affirmatively to both questions. Furthermore, the agent did not threaten Johnson, nor did he promise Johnson anything in return for speaking to him. When the agent inquired about the assault rifle, Johnson answered that it was not his. The agent then asked who else lived in the house, and Johnson replied that his sister and mother lived there. After the agent asked if the gun belonged to either of them, Johnson replied that he would take the charge. This exchange of questioning does not constitute a threat. Thus, the district court properly admitted testimony about statements made by Johnson during the interview.

12

Although Johnson contends that he waived his rights based on his belief that the ATF agent would inquire about the electronic-monitoring violations, the Supreme Court has "never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *United States v. Barner*, 572 F.3d 1239, 1244 (11th Cir. 2009) (holding it was not required that defendant be advised that his interrogator was actually conducting a drug investigation rather than a home invasion investigation) (quoting *Moran v. Burbine*, 475 U.S. 412, 422 (1986)).

## V.

Similarly, Johnson's next argument—that the district court erred in allowing evidence that he was on parole—is without merit.  Specifically, Johnson contends that the jury was not required to know that he was on parole because he stipulated that he was a convicted felon.

Here, the district court did not abuse its discretion by admitting evidence that Johnson was on parole because the information was required to explain why the parole officers searched Johnson's residence and cellular telephone, and the events of Johnson's arrest and interview.  Without such explanation, the jury would have been left to speculate as to why the officers searched Johnson's home.  Thus, the district court properly admitted such evidence because it pertained to the chain of events explaining the context of the crime charged.  *See United States v. McLean*,

138 F.3d 1398, 1403 (11th Cir. 1998) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context . . . is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime . . . .") (quotation omitted); *United States v. Herre*, 930 F.2d 836, 837-38 (11th Cir. 1991) (finding evidence of defendant's previous arrest was inextricably intertwined with evidence of the charged offense and was part of "the chain of events explaining context, motive, and set-up . . . to complete the story of the crime for the jury.") (quotation omitted).

## VI.

Johnson next argues that the district court erred in permitting the ATF agent to testify as an expert witness in regard to the contents of the cellular telephone because he had not received the requisite notice and lacked the opportunity to prepare a defense. Particularly, Johnson claims that he objected to the agent being called based on his expertise with forensic computer analysis, but the district court took testimony on the issue. Johnson's argument is misplaced.

Contrary to Johnson's argument, the district court sustained Johnson's objection at trial. The court stated that it would not allow expert testimony about computer forensics and directed the government to only question the agent as to his personal knowledge based on handling the device used to extract digital content

14

from Johnson's cellular telephone.  Thus, the court did not abuse its discretion in admitting testimony regarding the contents of Johnson's cellular telephone.

## VII.

Finally, Johnson argues that the district court's sentence is procedurally and substantively unreasonable.  Johnson argues that his sentence is procedurally unreasonable because his prior conviction for obstruction of a law enforcement officer was not a "crime of violence," and thus was improperly used to apply the base offense level of 26 in U.S.S.G. § 2K2.1(a).  Johnson further argues that his sentence is procedurally unreasonable because the district court erred in applying the obstruction of justice enhancement under U.S.S.G. § 3C1.1.  Lastly, Johnson argues that his 120-month sentence is substantively unreasonable because the court imposed a sentence "greater than necessary" to achieve the purposes of 18 U.S.C. § 3553(a).  We disagree.

### A.  Procedural Reasonableness

#### 1.  "Crime of Violence" U.S.S.G. § 2K2.1(a)(1)

Johnson argues that his prior conviction for obstruction of a law enforcement officer was not a "crime of violence" because a defendant can violate the felony part of the statute by nonviolent means.

U.S.S.G. § 2K2.1(a) provides that a defendant will receive a base offense level of 26 if: (A) the offense involved a [] semi-automatic firearm that is capable

15

of accepting a large capacity magazine . . .; and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(1). Section 4B1.2(a) defines "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. U.S.S.G. § 4B1.2(a).

In assessing crimes of violence under the Sentencing Guidelines, courts use the same framework to analyze violent felonies under the Armed Career Criminal Act ("ACCA"). *United States v. Harris*, 586 F.3d 1283, 1285 (11th Cir. 2009). Under the ACCA, courts use a "categorical approach," in which courts look only to the fact of conviction and the statutory definition of the prior offense, not the particular facts underlying the conviction. *United States v. Alexander*, 609 F.3d 1250, 1253-54 (11th Cir. 2010). However, when statutory phrases cover several crimes, some requiring violent force and some which do not, courts may use the "modified categorical approach," thereby relying on the charging document, plea agreement, transcript of the plea colloquy, and findings and conclusions from a bench trial. *Johnson v. United States*, 559 U.S. 133, 144 (2010).

16

The Georgia state statute under which Johnson was convicted for obstruction of a police officer provides: "Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . by offering or doing violence to the person of such officer . . . is guilty of a felony . . . . O.C.G.A. § 16-10-24(b).

Here, the district court did not err in finding that Johnson's conviction for obstruction of a police officer qualified as a "crime of violence." Johnson's specific offense for obstruction of a police officer was categorized as a felony obstruction, not a misdemeanor obstruction. Additionally, under the "categorical approach," Johnson's prior conviction for obstruction of justice is a "crime of violence." The Georgia statutory language of the felony provision includes as an element of the offense the use, attempted use, or threatened use of physical force against the person of another. *See* U.S.S.G. § 4B1.2(a); O.C.G.A. § 16-10-24(b); *Fairwell v. State*, 717 S.E.2d 332, 338-39 (Ga. Ct. App. 2011) (stating that "restricts, obstructs, or opposes" implies forcible resistance). Finally, under the "modified categorical approach," the charging documents and guilty plea from the prior conviction show that Johnson's prior offense involved actual force in the form of battery by punching a police officer in the face. Therefore, the district court properly applied the base offense level of 26 under § 2K2.1(a)(1) because the prior conviction was properly categorized as a "crime of violence."

## 2. Obstruction of Justice Enhancement

17

Johnson next argues that the district court erred in applying a two-level increase for obstruction of justice in the total offense level under U.S.S.G. § 3C1.1 because conversations with his sister constituted truthful trial preparation.

The Guidelines provide for a two-level increase in the total offense level if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

Obstructive conduct includes, among other things, suborning perjury or unlawfully influencing a witness. *Id.*, comment. n.4(A)-(B).

Here, the district court did not clearly err in applying the two-level enhancement for obstruction of justice. The court explained that it was clear from the coded message from Johnson to his sister that it was intended to persuade her to testify to things that were not true. For example, Johnson attempted to have his sister testify that he had not been in the house when the incriminating photos were taken. However, the court found that the photographs and date stamps conclusively showed that Johnson was at the house. Thus, the obstruction of justice enhancement was not clearly erroneous. *See, e.g.*, *United States v. Izquierdo*, 448 F.3d 1269, 1278 (11th Cir. 2006) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (citation omitted).

18

**B. Substantive Reasonableness**

Lastly, Johnson contends that his sentence was "greater than necessary" to achieve the purposes under 18 U.S.C. § 3553(a).

The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in § 3553(a)(2), including the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense," deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). The court must also consider such factors as "the nature and circumstances of the offense and the history and circumstances of the defendant." *See* 18 U.S.C. § 3553(a)(1).

Johnson's 120-month sentence was substantively reasonable. The sentence fell within the applicable 110-to-137 month guidelines range. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (stating that a sentence within the guidelines range is ordinarily expected to be reasonable). Additionally, the court acted within its discretion when applying the § 3553(a) factors. Although Johnson argues that the court gave too little weight to his positive personal history, the record reveals the serious nature of the instant offense and Johnson's significant criminal history. For example, the court found that the firearm at issue was loaded with an extended clip of ammunition, Johnson's prior record included two drug-

19

related convictions, and Johnson had committed one crime of violence against a law enforcement officer.  *See* 18 U.S.C. § 3553(a).  Accordingly, the 120-month sentence was reasonable and supported by the § 3553(a) factors.[8]

## VIII.

For the foregoing reasons, we affirm Johnson's conviction and sentence.

---

[8] Because we find that Johnson's sentence was substantively reasonable, we need not address Johnson's argument that the court erred in determining his base offense level under § 2K2.1(a)(1) by using a prior conviction for possession with intent to distribute a small amount of marijuana.  Johnson fails to argue that the district court committed clear error in applying the relevant guidelines provisions and definitions to the facts of his case.  Rather, Johnson argues that, because the conviction only involved a small amount of marijuana, the court should have considered a two-level downward variance.  Such an argument relates to whether a sentence is substantively reasonable.