J-S02034-17

2017 PA Super 363

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ABDUL MURRAY | |
| Appellant | No. 3010 EDA 2015 |

Appeal from the Judgment of Sentence April 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001435-2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, J., and MOULTON, J.

OPINION BY MOULTON, J.:                    **FILED NOVEMBER 15, 2017**

Abdul Murray appeals from the April 30, 2015 judgment of sentence imposed by the Philadelphia County Court of Common Pleas following Murray's conviction for possession of a firearm by a prohibited person, 18 Pa.C.S. § 6105(a)(1).  We affirm.

The trial court set forth the following facts:

> Pennsylvania Parole Agent Todd Clark testified that one of the parolees he was responsible for supervising starting in December 2012 was Defendant Abdul Murray.  In response to [Murray's] failure to report for a scheduled meeting at the parole office, Agent Clark went to [Murray's] residence at 1247 West Huntingdon Street in Philadelphia, a group home that housed a number of parolees.

> [Murray] was not present, so Agent Clark left him a written instruction to report to the parole office on January 11, 2013.  On January 11, 2013, [Murray] reported to the parole office, at which time Agent Clark scheduled a home visit for January 15, 2013.

On January 15, 201[3],[1] Agent Clark went to the scheduled home visit, but [Murray] was not present. The following day Agent Clark received a phone call from . . . one of the managers of the group home in which [Murray] resided. Based on the information received, Agent Clark spoke to [Murray] by phone and directed him to report to the parole office that day.

When [Murray] reported to the parole office, Agent Clark asked him about his living situation and why he had moved without permission. [Murray] explained that on January 11, 2013, a housemate known as "E" or Ervin threatened [Murray] with a black .357 revolver, which [Murray] managed to wrest away from Ervin. [Murray] then gave the gun to an acquaintance identified as Jay or "J".

Based upon the acknowledgement of possession of a firearm, a violation of the condition of [Murray's] supervision, Agent Clark took [Murray] into custody, and proceeded to review the text messages on [Murray's] phone. Agent Clark identified two relevant messages dated January 16, 2013 sent within less than a minute of each other:

> Yo, Kel if you didn't hear from me by tonight I am locked up. So, my stuff is over 1247 West Huntingdon Street.

> And the thing I was telling you about that I took from the bully is in the bathroom right under the tub.

Agent Clark then went to the group home at 1247 West Huntingdon Street where [Murray] had been residing. He was permitted entry to the property and searched the bathroom. Under the tub he located a loose piece of metal, behind which Agent Clark found a bag with an unloaded .357 revolver. Agent Clark called police and turned over the gun to police custody.

---

[1] The trial court inadvertently wrote "2014" instead of "2013" in its opinion.

> Seven months after he allegedly attacked [Murray], Ervin Bonner ("E") attacked another man, Michael Johnson, with a gun at another recovery house. Bonner was arrested on July 18, 2013 for his attack on Mr. Johnson.

Memorandum Opinion, 3/7/16, at 2-4 ("1925(a) Op.") (internal citations omitted).

Murray filed two motions *in limine* before trial. In the first motion, Murray sought to suppress his statements to Agent Clark and the evidence obtained from the warrantless search of his cell phone. In the second motion, Murray sought to preclude the introduction of his statements to Agent Clark at trial under the *corpus delicti* rule. Both motions were heard and denied by the Honorable Susan I. Schulman. Murray then orally moved to recuse Judge Shulman, who granted the motion.

On September 11, 2014, Murray proceeded to a non-jury trial before the Honorable Giovanni Campbell. At the conclusion of the trial, the trial court held the verdict under advisement. On October 15, 2014, the trial court found Murray guilty of possession of a firearm by a prohibited person. On December 14, 2014, Murray filed a motion for extraordinary relief, alleging that his trial counsel was ineffective for failing to adequately investigate Murray's justification defense. The trial court appointed new counsel, who filed an amended motion for extraordinary relief. The trial court denied the motion on February 29, 2015.

On April 30, 2015, the trial court sentenced Murray to 4½ to 9 years' incarceration. Murray timely filed post-sentence motions, which were denied

by operation of law on September 4, 2015. On September 30, 2015, Murray timely appealed to this Court.

Murray raises the following issues on appeal:

I. Did the Commonwealth violate **Brady v. Maryland**[2] by failing to disclose the identity of the attacker who earlier pulled a gun on [Murray], as well as the identi[t]y of another victim who previously accused the same attacker of pulling a gun on him? Furthermore, did the Commonwealth continue the violation by failing to disclose the allegation made by the other victim to the Philadelphia Police Department and the resultant charges that the Commonwealth brought against the attacker?

II. Are the identities of Ervin Bonner, Michael Johnson and Rashod Green—as well as the allegations made by Mr. Johnson and the charges against Bonner— after-discovered evidence entitling [Murray] to a new trial?

III. Did the Commonwealth fail to satisfy the *corpus del*[*i*]*cti* rule prior to introducing [Murray's] statements to Agent Clark where it failed to establish[] that a crime was committed prior to offering Agent Clark to testify as to [Murray's] statements?

IV. Should all evidence recovered from [Murray's] cell phone have been suppressed, because Agent Clark undoubtedly failed to satisfy the simple requirement of him—get a warrant?

V. Did the Commonwealth fail to offer sufficient evidence to authenticate certain text messages that it offered into evidence?

Murray's Br. at 4 (trial court answers omitted).

---

[2] 373 U.S. 83 (1963).

First, Murray asserts that the Commonwealth violated **Brady** by failing to disclose to the defense Bonner's identity and subsequent arrest for an allegedly similar incident before trial.  We disagree.

**Brady** requires the prosecution to disclose all exculpatory information material to the defendant's guilt or punishment, including impeachment evidence.  **Commonwealth v. Ovalles**, 144 A.3d 957, 965 (Pa.Super. 2016).  To establish a **Brady** violation, the defendant has the burden of proving that: (1) the evidence at issue was favorable to the defendant, either as exculpatory or impeachment evidence; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) the defendant was prejudiced.  **Id.**

Here, the record established that Murray's counsel knew Bonner's identity before trial.  In his December 24, 2014 motion for extraordinary relief, Murray averred:

> **Prior to trial, defense counsel had in their possession the name and former address of the individual who introduced the gun in question into [Murray's] life in the first place.**  In spite of having this information available, counsel failed to research this individual's criminal background to determine whether threatening other residents in the rooming house where he lived was part of some common plan and scheme on the part of Mr. Bonner.

Murray's Mot. for Extraordinary Relief, 12/24/14, ¶ 11 (emphasis added).  It is well settled that "**Brady** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when

the evidence was available to the defense from other sources." *Ovalles*, 144 A.3d at 965.

Moreover, Murray failed to establish that the Commonwealth withheld evidence of Bonner's subsequent criminal conduct. In his motion for extraordinary relief, Murray notified the Commonwealth that Bonner had been arrested for an allegedly similar incident, attaching the arrest report for Bonner's criminal case to the motion. *See* Murray's Mot. for Extraordinary Relief, 12/24/14, Ex. A. The Defender Association of Philadelphia, which represented Murray at that time, also represented Bonner. *See id.*, Ex. B. The Commonwealth cannot be charged with failing to disclose information that was readily available to the defense. *See Commonwealth v. Grant*, 813 A.2d 726, 730 (Pa. 2002) (rejecting *Brady* claim regarding prosecution witness's additional *crimen falsi* convictions where defendant was represented by public defender at trial, public defender's office uncovered evidence after trial, and defendant failed "to explain why the public defender could not have procured this same information before or during trial"). Therefore, Murray's *Brady* claim lacks merit.

To the extent Murray argues that his trial counsel was ineffective for failing to properly investigate Bonner's identity and criminal background before trial, we agree with the trial court that such a claim is properly deferred to collateral review. *See* 1925(a) Op. at 9 ("[T]he PCRA is the appropriate vehicle for raising the challenges [to counsel's ineffectiveness] and conducting the inquiry into the failure to investigate . . . ."). Absent extraordinary

circumstances, which do not exist here, "claims of ineffective assistance of counsel are to be deferred to PCRA review . . . and such claims should not be reviewed upon direct appeal." *Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013).

Second, Murray asserts that the trial court erred in denying his motion for a new trial based on after-discovered evidence. Murray claims that the identities of Bonner, Johnson, and Green, as well as Bonner's subsequent arrest for a similar incident, qualify as "new" evidence entitling him to a new trial. We disagree.

To obtain a new trial based on after-discovered evidence, the defendant must prove, by a preponderance of the evidence, that the evidence: (1) could not have been obtained before the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008); *see* Pa.R.Crim.P. 720(c). As discussed above, Murray's counsel knew Bonner's identity before trial and could have uncovered Bonner's criminal record, given that both Murray and Bonner were represented by the Defender Association at that time. Therefore, because Murray could have obtained the evidence before trial by exercising reasonable diligence, he failed to satisfy the first prong of an after-discovered evidence claim.

Third, Murray asserts that the trial court erred in admitting his statements to Agent Clark at trial in violation of the *corpus delicti* rule. Murray

argues that the Commonwealth failed to establish the *corpus delicti* of possession of a firearm by a prohibited person before admitting Murray's statements about the gun. We disagree.

The *corpus delicti* rule involves the admissibility of evidence, which we review for an abuse of discretion. ***Commonwealth v. Dupre***, 866 A.2d 1089, 1097 (Pa.Super. 2005). "The *corpus* [*delicti*] . . . rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." ***Id.*** (quoting ***Commonwealth v. Rivera***, 828 A.2d 1094, 1103 (Pa.Super. 2003)). "The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with [an] accident." ***Id.*** at 1098. The *corpus delicti*, or "body of the crime," may be proven by circumstantial evidence. ***Commonwealth v. Hogans***, 584 A.2d 347, 349 (Pa. Super. 1990).

Our Court has explained:

> Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Young***, 904 A.2d 947, 956 (Pa.Super. 2006) (quoting ***Rivera***, 828 A.2d at 1104 n.10).

Here, the trial court found sufficient evidence to support the admission of Murray's statements under the *corpus delicti* rule. At the suppression hearing, Agent Clark testified that he discovered an operable gun concealed in a communal bathroom inside a boarding house where Murray and other parolees lived. N.T., 1/2/14, at 25-26. The gun was hidden inside a plastic bag and under a bathtub in the only bathroom in the boarding house. ***See id.*** We agree with the trial court that the evidence of a concealed weapon inside a parolee boarding house was more consistent with criminal activity than with an accident. That the gun was secreted in such a manner suggests that the person who placed it there did not lawfully possess it. We conclude that even without Murray's statements, the Commonwealth established, by a preponderance of the evidence, the *corpus delicti* of possession of a firearm by a prohibited person. Therefore, the trial court did not abuse its discretion in admitting Murray's statements.

Fourth, Murray asserts that the trial court erred in admitting the text messages recovered from his cell phone because Agent Clark failed to obtain a warrant before searching his phone. Murray relies on ***Riley v. California***, 134 S.Ct. 2473, 2495 (2014), in which the United States Supreme Court held that the Fourth Amendment to the Unites States Constitution generally requires police to obtain a warrant before searching a cell phone incident to

an arrest.[3]  In response, the Commonwealth argues that **Riley**'s holding does not apply to parolees such as Murray because parolees have a diminished expectation of privacy.

As the Commonwealth points out, **Riley** did not address parole searches.  To date, this Court has applied **Riley** only to cases involving a search incident to an arrest of a non-parolee.  **See Commonwealth v. Stem**, 96 A.3d 407, 414 (Pa.Super. 2014) ("In light of the [Supreme] Court's decision in **Riley**, the [warrantless] search of Stem's cellular telephone undoubtedly was unconstitutional."); **see also Commonwealth v. Mosley**, 114 A.3d 1072, 1081 (Pa.Super. 2015) (concluding that where police officer failed to obtain search warrant before viewing text messages on cell phone seized incident to Mosley's arrest, any improper viewing of messages was harmless error "because a valid warrant was subsequently issued to search the phone[]"), *app. denied*, 166 A.3d 1215 (Pa. 2017).  We have found no Pennsylvania appellate decision addressing **Riley**'s application to parole searches.[4]

---

[3] **Riley** was decided on June 25, 2014, shortly after Judge Shulman denied Murray's motion to suppress the text messages.  On July 29, 2014, Murray filed a motion for reconsideration based on the **Riley** decision, which Judge Shulman denied after a hearing on August 11, 2014.

[4] Several federal courts that have addressed this issue following **Riley** have concluded that **Riley**'s holding is inapplicable to parole searches.  **See, e.g., United States v. Luna**, 602 Fed.Appx. 363, 365 (9th Cir.) (holding that warrantless search of parolee's cell phone "was a constitutional parole search"), *cert. denied*, 136 S.Ct. 102 (2015); **United States v. Johnson**, 579 Fed.Appx. 920, 926 n.6 (11th Cir. 2014) ("**Riley** . . . has no application

We agree with the Commonwealth that **Riley** is inapplicable to this case because of Murray's status as a parolee. It is well settled that "[i]n exchange for early release from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general." **Commonwealth v. Edwards**, 874 A.2d 1192, 1197 (Pa.Super. 2005). "Because the very assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law, the [parole] agents need not have probable cause to search a parolee or his property; instead **reasonable suspicion is sufficient to authorize a search**." **Commonwealth v. Curry**, 900 A.2d 390, 394 (Pa.Super. 2006) (emphasis added; internal quotations omitted).

In Pennsylvania, a search of a parolee's property will be deemed reasonable if the evidence shows that: (1) the parole officer had reasonable

_____

to the instant case because here [the defendant] waived his Fourth Amendment rights as a condition of parole."); **United States v. Johnson**, No. 14–CR–00412–TEH, 2015 WL 4776096, at *3 (N.D.Cal. Aug. 13, 2015) ("[E]very federal court that has addressed the application of the parole search exception in the wake of **Riley** has found that the exception remains valid."); **United States v. Martinez**, No. CR 13–00794 WHA, 2014 WL 3956677, at *3 (N.D.Cal. Aug. 12, 2014) (concluding that **Riley** was "inapplicable to [the defendant] because he was on parole and was subject to a parole search condition"); **United States v. Dahl**, 64 F.Supp.3d 659, 661-64 (E.D.Pa. 2014) (holding that warrantless search of probationer's cell phone was proper where probation officer had reasonable suspicion of probation violation under Delaware law). **But see United States v. Lara**, 815 F.3d 605, 612-13 (9th Cir. 2016) (concluding that warrantless search of probationer's cell phone was unconstitutional where condition in probation order did not clearly encompass search of cell phone and its data and search did not promote legitimate governmental interest of combatting recidivism because probationer was convicted of non-violent drug offense and had merely missed his meeting with probation officer).

suspicion that the parolee committed a parole violation; and (2) the search was reasonably related to the parole officer's duty. ***Commonwealth v. Williams***, 692 A.2d 1031, 1036 (Pa. 1997); ***see*** 61 Pa.C.S. § 6153(d)(2) (stating that parole agent may search parolee's property if agent has reasonable suspicion to believe that property in parolee's possession "contains contraband or other evidence of violations of the conditions of supervision"). Parole agents with the requisite reasonable suspicion need not obtain a warrant to search a parolee's property. ***See Curry***, 900 A.2d at 394. To determine whether reasonable suspicion exists in this context, we consider the following factors:

> (i) The observations of agents.
>
> (ii) Information provided by others.
>
> (iii) The activities of the offender.
>
> (iv) Information provided by the offender.
>
> (v) The experience of agents with the offender.
>
> (vi) The experience of agents in similar circumstances.
>
> (vii) The prior criminal and supervisory history of the offender.
>
> (viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(6).

Here, the evidence established that Agent Clark's search of Murray's cell phone was based on reasonable suspicion that Murray had committed a parole violation. At the suppression hearing, Agent Clark testified that Murray admitted to possessing a firearm after an altercation with a housemate, which

was a violation of Murray's parole. N.T., 1/2/14, at 18-19. Agent Clark also testified that based on his prior experience, he believed Murray's cell phone could contain additional evidence of a parole violation, such as "conversations in reference to the firearm that [Murray] was speaking about" or "photographs of [Murray] with the firearm." *Id.* at 21-22, 29-30.[5] Accordingly, we conclude that Agent Clark's search of Murray's cell phone for text messages and photos was reasonably related to his duty to investigate a suspected parole violation. *See Commonwealth v. Colon*, 31 A.3d 309, 316 (Pa.Super. 2011); *Commonwealth v. Koehler*, 914 A.2d 427, 434 (Pa.Super. 2006).

Finally, Murray asserts that the Commonwealth failed to properly authenticate the text messages recovered from his cell phone before offering them into evidence. We disagree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *In Interest of F.P.*, 878 A.2d 91, 94 (Pa.Super. 2005). Electronic communications, such as text messages, must be authenticated prior to their admission. *See Commonwealth v. Koch*, 39 A.3d 996, 1002-03 (Pa.Super. 2011), *aff'd by an equally divided court*, 106 A.3d 705 (Pa. 2014). "[P]roof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing." *F.P.*, 878 A.2d at 94.

---

[5] As the concurring opinion correctly observes, "[w]e are not faced here with a bald assertion, based on an agent's experience, that cell phones often contain relevant evidence." Concurring Op. at 1.

Under Pennsylvania Rule of Evidence 901, text messages may be authenticated by: (1) testimony from either the author or the sender; (2) circumstantial evidence, including "distinctive characteristics" like information specifying the author-sender or "reference to or correspondence with relevant events" preceding or following the message; or (3) "any other facts or aspects of the [message] that signify it to be what its proponent claims." *Commonwealth v. Koch*, 106 A.3d 705, 712-13 (Pa. 2014) (Castille, C.J., in support of affirmance); *see Commonwealth v. Collins*, 957 A.2d 237, 265-66 (Pa. 2008). Further, "[a]uthentication generally entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.'" *Koch*, 106 A.3d at 713 (quoting Pa.R.E. 901(a)).

The trial court determined that the text messages in question were properly authenticated based on the contextual clues in the messages and the fact that Agent Clark retrieved the phone from Murray's person:[6]

---

[6] Although Murray argues in his brief that the Commonwealth failed to prove that the cell phone in question was Murray's phone, Murray's Br. at 27-28, the record belies this claim. Agent Clark testified at the suppression hearing as follows:

> When we took [Murray] into custody I confiscated his cell phone. After [Murray] was in custody I asked [him] for the access code to his cell phone. I believe he hesitated. It was 2850. I entered that code to unlock the screen of his cell phone and I reviewed his text messages.

N.T., 1/2/14, at 19-20; *see also* Murray's Post-Sent. Mot., Appx. B at 2. Moreover, Murray did not contest his possession or ownership of the cell phone

Here, in addition to the fact that the phone was in [Murray's] possession, the content of the message[s], regarding the sender's expectation that he might be getting locked up that day, and alluding . . . to an item taken from the bully, is consistent with the events and chronology of [Murray] being ordered to report to his parole agent's office within 45 minutes, earlier that same day,[2] and [Murray's] description of the incident in which he acquired the gun.

[2] The time on the messages could not have been correct, since those times were actually after the time when Agent Clark recovered the phone from [Murray]. Of course this is impossible, but as the Agent pointed out, it did not appear that the time on the phone was set to the correct zone.

1925(a) Op. at 5-6 (citations omitted). The record supports the trial court's reasoning. Therefore, the trial court did not abuse its discretion in admitting the text messages into evidence.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliott joins this opinion.

Judge Stabile joins this opinion and files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2017

in his motion to suppress, at the suppression hearing, or at trial. Therefore, he has waived this argument on appeal.

- 15 -