[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15035

_____

D.C. Docket No. 3:16-cr-00055-MCR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLIFFORD B. GANDY, JR.

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 6, 2019)

Before WILLIAM PRYOR, and ROSENBAUM, Circuit Judges, and CONWAY,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Anne C. Conway, United States District Judge for the Middle District of Florida,
sitting by designation.

This appeal requires us to decide whether Clifford Gandy Jr.'s prior conviction for battery of a jail detainee, Fla. Stat. §§ 784.03, 784.082, qualifies as a "crime of violence" under the Sentencing Guidelines. Gandy was convicted of possession with intent to distribute cocaine and marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(C)–(D), possession of a firearm in furtherance of a drug-trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i), and possession of a firearm by a convicted felon, *id.* §§ 922(g)(1), 924(a)(2). Based on Gandy's prior convictions for battery and a controlled-substance offense, the district court classified him as a career offender. United States Sentencing Guidelines Manual § 4B1.1(a) (Nov. 2016). The district court then calculated Gandy's sentencing range as 360 months to life imprisonment and varied downward to impose a 300-month sentence of imprisonment. Gandy contends that his prior conviction for battery is not a crime of violence under the Guidelines. He argues that Florida battery is divisible only between "touching and striking" and "intentionally causing bodily harm," and that, under the modified categorical approach, we cannot determine that he was convicted of "intentionally causing bodily harm." Because the record makes clear that Gandy's conviction for battery necessarily was for "intentionally causing bodily harm," we affirm.

## I. BACKGROUND

In June 2016, a grand jury indicted Gandy for possession with intent to distribute cocaine and marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(C)–(D) (Count 1);

2

possession of a firearm in furtherance of a drug-trafficking offense, 18 U.S.C. 924(c)(1)(A)(i) (Count 2); and possession of a firearm by a convicted felon, *id.* §§ 922(g)(1), 924(a)(2) (Count 3). After a two-day trial, the jury convicted Gandy on all counts. The district court then scheduled a sentencing hearing, and the probation officer prepared Gandy's presentence investigation report.

The probation officer classified Gandy as a career offender based on three prior felony convictions: a 2010 *nolo contendere* plea for battery upon a detainee, Fla. Stat. §§ 784.03, 784.082; a 2012 *nolo contendere* plea for felony battery; and a 2013 *nolo contendere* plea for the sale, manufacture, delivery, or possession of a controlled substance with intent to sell. *See* U.S.S.G. § 4B1.1(a). This classification subjected Gandy to the increased sentencing ranges that apply to career offenders with multiple counts of conviction one of which is possession of a firearm in furtherance of a drug-trafficking offense, 18 U.S.C. § 924(c). *See* U.S.S.G. § 4B1.1(b)–(c). The probation officer calculated that Gandy's total sentencing range was 360 months to life imprisonment.

Gandy objected to his classification as a career offender on the ground that his battery convictions were not crimes of violence. He asserted that our decision in *United States v. Green (Green I)*, 842 F.3d 1299 (11th Cir. 2016), *opinion vacated and superseded on denial of reh'g*, 873 F.3d 846 (11th Cir. 2017), was wrongly decided and that striking and touching for Florida battery, Fla. Stat. §

3

784.03, are not divisible. And Gandy argued, based on *Descamps v. United States*, 570 U.S. 254 (2013), that no documents could be used to determine whether his battery convictions qualified as crimes of violence under the modified categorical approach. *See Shepard v. United States*, 544 U.S. 13 (2005). Gandy calculated that his total sentencing range should be 144 to 165 months' imprisonment.

The government responded that Gandy's battery convictions constituted crimes of violence based on *Green I*. In *Green I*, we explained that the Florida simple battery statute is divisible between "touching," "striking," and "intentionally causing bodily harm" battery, and that a court should use the modified categorical approach and consult *Shepard*-approved documents to decide which elements of battery a conviction was based on. 842 F.3d at 1322. And we held that if *Shepard* documents establish that a defendant was convicted of the "striking" element as opposed to the "touching" element of simple battery, then the conviction qualifies as a predicate "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e). *Id.*

With respect to the 2010 conviction, the government submitted four *Shepard* documents. First, the government submitted a charging document that stated that Gandy committed a battery upon a jail detainee "by actually and intentionally touching or striking [the victim] . . . or by intentionally causing bodily harm to [the

4

victim,] by hitting the victim in the face and head," in violation of Fla. Stat. §§ 784.03, 784.082.

Second, the government submitted Gandy's sentence-recommendation form, which is the equivalent of his plea agreement. The sentence recommendation reflects that Gandy pleaded *nolo contendere* to "Battery Upon a Jail Visitor or Other Detainee." The sentence recommendation, which Gandy and his state-court counsel signed, also includes the following factual basis:

> FACTUAL BASIS: *The arrest report* . . . which is a part of the court record filed with the clerk of the court *is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea* and/or the factual basis is as follows:
>
> . . .
>
> On December 11, 2010, deputies responded to the Red Pod in the Escambia County Jail and observed victim Clunion Galloway laying on the floor and bleeding. Victim Galloway stated that he was playing cards with other inmates when he was hit from behind. Victim Galloway did not see who the attacker was.
>
> Video surveillance was reviewed and shows the defendant approached the victim and str[uck] him in the head multiple times causing the victim to fall to the ground. The video then shows the defendant continuing to strike the victim on the ground. The video does not show any provocation.

Gov. Ex. A at 5, *United States v. Gandy*, No. 3:16-cr-00055-MCR-1 (N.D. Fla. Dec. 9, 2016), ECF No. 58-1 (emphasis altered).

5

Third, the government submitted the arrest report that Gandy expressly incorporated as the factual basis for his plea. The arrest report includes the following statement of probable cause:

> On 12/11/2010 . . . Clifford Gandy, Jr did knowingly and intentionally commit the offense of *Battery Causing Bodily Harm*, as follows.
>
> On 12/12/10, I was dispatched to [the jail] in reference to a battery complaint. Upon arrival, I made contact with Sergeant Bullion . . . who stated that at approximately 2135 hours on 12/11/2010 an inmate attacked another inmate. Sergeant Bullion provided me with their incident report . . . . The report stated that Deputy Frymire . . . responded to the Red Pod where he observed V/Clunion Galloway lying on the floor and bleeding. V/Galloway told Deputy Frymire that he was playing cards when someone hit him from behind. V/Galloway stated that he did not see who hit him. V/Galloway was transported to the Infirmary where he was treated by medical staff. Deputy Frymire stated that S/Clifford Gandy later admitted to hitting V/Galloway. S/Gandy was also escorted to the Infirmary where he was seen by medical staff.
>
> I was advised by Sergeant Bullion that V/Galloway wished to pursue criminal charges, and he also advised me that there was a video of the incident. Sergeant Buillion played the video for me at which time I observed V/Galloway playing cards. I could then clearly see S/Gandy walk up behind V/Galloway and unprovokedly str[ike] V/Galloway in the face which caused V/Galloway to fall down to the ground. S/Gandy then continued to strike V/Galloway multiple times on the head. . . . Sergeant Bullion took photographs of V/Galloway's injuries which he provided to me. . . . V/Galloway had a cut below his right eye, a scratch below his right ear, a bruise on the top of his head, a minor cut on his nose and a cut above his left eye.
>
> S/Gandy was charged with *battery causing bodily harm*.

*Id.* at 11–12 (emphasis added). The report also lists the charge as "Battery Caus[ing] Bodily Harm," and it refers exclusively to the subsection of the statute

6

that Gandy violated as section 784.03(1)(a)(2), which addresses "intentionally causing bodily harm."

Fourth, the government submitted the state-court judgment. The judgment states that Gandy pleaded *nolo contendere* to "battery upon a jail visitor or other detainee," in violation of sections 784.03 and 784.082.

In January 2017, the district court entered an order continuing Gandy's sentencing. The court was inclined to agree with Gandy that section 784.03 is not divisible between "touching" and "striking" elements, but it explained that it was "clearly" bound by *Green I*. The court also mentioned that it hoped that the issue of the divisibility of the Florida battery statute would be resolved in the then-pending appeal in *United States v. Vail-Bailon*, No. 15-10351 (11th Cir.). Gandy's sentencing was then rescheduled for after we decided that appeal. In August 2017, we issued our opinion in *Vail-Bailon* that felony battery under Fla. Stat. § 784.041 categorically qualifies as a crime of violence under the Sentencing Guidelines. *United States v. Vail-Bailon*, 868 F.3d 1293, 1308 (11th Cir. 2017) (en banc). After our ruling, the district court rescheduled Gandy's sentencing hearing for September 2017.

At his sentencing hearing, Gandy renewed his objection to the career-offender designation. The district court explained that *Green I* remained binding precedent even after *Vail-Bailon*. The district court then overruled the objection.

7

After that ruling, the government requested and was granted the opportunity to further explain its position. The government first conceded that Gandy's 2012 battery conviction did not qualify as a crime of violence under the career-offender guideline. But the government maintained that Gandy was correctly designated a career offender because the 2010 conviction of battery of a detainee qualified as a crime of violence because it constituted "striking" battery under *Green I*.

The government also advanced an alternative argument: even if *Green I* was wrong about the divisibility of Florida battery, Gandy's battery conviction would still qualify as a crime of violence because battery would still be divisible between "touching and striking" and "intentionally causing bodily harm," and the *Shepard* documents leave "no doubt" that Gandy pleaded to "intentionally causing bodily harm." Gandy responded that a conviction for bodily-harm battery does not require proof of violent force, as required under *Johnson v. United States (Curtis Johnson)*, 559 U.S. 133 (2010). According to Gandy, one could intentionally cause bodily harm by, for example, "digging a hole and putting a blanket over it or loosening someone's tires," and this would not meet the requirement of the use of violent force. The court never addressed the government's alternative argument.

The court varied downward from the Guidelines range of 360 months to life imprisonment and imposed a 300-month sentence of imprisonment. One week later, we vacated *Green I* and issued a superseding opinion that did not address the

8

divisibility of Florida simple battery. *See United States v. Green (Green II)*, 873 F.3d 846 (11th Cir. 2017). Gandy then filed his appeal.

## II. STANDARD OF REVIEW

We review *de novo* whether a battery conviction qualifies as a crime of violence under the Sentencing Guidelines. *Vail-Bailon*, 868 F.3d at 1296.

## III. DISCUSSION

Gandy argues that the district court erred when it classified him as a career offender on the ground that his 2010 conviction for battery of a detainee was a crime of violence. To be classified as a career offender, Gandy must have at least two prior felony convictions for crimes of violence or controlled-substance offenses. U.S.S.G § 4B1.1(a). A "crime of violence" is defined as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1). The Supreme Court has defined physical force as "*violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140. Because there is no dispute that, for purposes of Gandy's career-offender designation, his conviction for a controlled-substance offense is a predicate offense and that his 2012 battery conviction is not, only the status of Gandy's 2010 battery conviction is at issue.

Gandy was convicted in 2010 under two statutes, Fla. Stat. §§ 784.03, 784.082. Section 784.03 defines the offense of simple battery:

9

(1)(a) The offense of battery occurs when a person:

1. Actually and intentionally touches or strikes another person against the will of the other; or

2. Intentionally causes bodily harm to another person.

Fla. Stat. § 784.03(1)(a). Although simple battery is ordinarily a misdemeanor, battery of a jail detainee is classified as felony under another statute. Fla. Stat. § 784.082(3).

Because section 784.03 does not define a crime of violence under the categorical approach, *see Curtis Johnson*, 559 U.S. at 138–40, we must decide whether the modified categorical approach allows us to conclude that Gandy's conviction qualifies. We may apply the modified categorical approach when the statute is divisible—that is, it "define[s] multiple crimes"—and a limited class of documents, often called *Shepard* documents, are available to determine "what crime, with what elements, a defendant was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). *Shepard* documents may include the charging document, any plea agreement submitted to the court, the transcript of the plea colloquy, or any "record of comparable findings of fact adopted by the defendant upon entering the plea." *Shepard*, 544 U.S. at 20–21, 26.

The parties agree that the battery conviction cannot be classified as a crime of violence for "striking" battery because section 784.03 is only divisible between "touching or striking" battery and "intentionally causing bodily harm" battery. The

10

parties also agree that "touching or striking" battery does not constitute a crime of violence. But the government argues that because Gandy necessarily pleaded to "bodily harm" battery, his conviction still qualifies as a crime of violence.

Because we agree with the government that we can determine that Gandy was necessarily convicted of "intentionally causing bodily harm," which qualifies as a crime of violence, we need not decide whether "touching" and "striking" are divisible or whether Gandy's conviction would qualify as "striking" battery. The parties do not dispute, and we agree, that the Florida statute is divisible and that battery by "intentionally causing bodily harm" is a separate element of the offense.

Battery by "intentionally causing bodily harm" categorically constitutes a crime of violence. Bodily-harm battery is proved by establishing two elements: the defendant caused bodily harm to another person, and he did so intentionally. *See* Fla. Stat. § 784.03(1)(a)(2). Although, under Florida law, bodily harm is broadly defined to encompass any "slight, trivial, or moderate harm" to a victim, *see Brown v. State*, 86 So. 3d 569, 571–72 (Fla. Dist. Ct. App. 2012), and Florida courts have applied the term to a wide range of physical injuries, *see, e.g.*, *Gordon v. State*, 126 So. 3d 292, 295–96, 296 n.4 (Fla. Dist. Ct. App. 2011) (bruises); *C.A.C. v. State*, 771 So. 2d 1261, 1262 (Fla. Dist. Ct. App. 2000) (scratches, swelling, and puncture marks), all of these injuries satisfy *Curtis Johnson*'s definition of violent force. *See Curtis Johnson*, 559 U.S. at 143 (explaining that

11

violent force "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example"). A defendant convicted of bodily-harm battery must have intentionally used "force capable of causing physical pain or injury to another person," *id.* at 140, so bodily-harm battery necessarily constitutes a crime of violence.

We next look to the *Shepard* documents for Gandy's battery conviction to determine whether he was necessarily convicted of intentionally causing bodily harm. *See Shepard*, 544 U.S. at 21 (explaining that the question is "whether the plea had 'necessarily' rested on the fact identifying the [offense]" as a predicate). The Supreme Court has repeatedly stressed that there is a "demand for certainty" in determining whether a defendant was convicted of a qualifying offense. *See Mathis*, 136 S. Ct. at 2257; *see Descamps*, 570 U.S. at 272 (asking whether the defendant "necessarily" committed the qualifying crime); *Shepard*, 544 U.S. at 21 (referring to "*Taylor*'s demand for certainty"); *Taylor v. United States*, 495 U.S. 575, 602 (1990). As a result, we may conclude that Gandy was convicted of a qualifying offense only if the *Shepard* documents "speak plainly" in establishing the elements of his conviction. *Mathis*, 136 S. Ct. at 2257.

Although the charging document, the judgment, and Gandy's sentence recommendation do not identify which crime within section 784.03 he was convicted of committing, the incorporated arrest report clearly identifies his

12

offense as bodily harm battery. To be sure, we ordinarily do not rely on police reports under the modified categorical approach because a defendant ordinarily does not admit the conduct described in them. *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012). But an arrest report that is incorporated by reference in a plea agreement qualifies as a "record of comparable findings of fact adopted by the defendant upon entering the plea" that we may consider. *Shepard*, 544 U.S. at 20; *see United States v. Diaz-Calderone*, 716 F.3d 1345, 1349–50 (11th Cir. 2013) (holding that a district court may rely on arrest reports if the defendant acknowledges his guilt and implicitly affirms the truth of the arrest report during a plea colloquy).

The incorporated arrest report "speaks plainly" that Gandy's offense was bodily-harm battery. The report begins by listing the charge as "Battery Caus[ing] Bodily Harm," and it refers exclusively to the subsection of the Florida simple battery that Gandy violated as section 784.03(1)(a)(2), the "bodily harm" subsection. The report then alleges in its statement of probable cause that "[o]n 12/11/2010 . . . [Gandy] did knowingly and intentionally commit the offense of *Battery Causing Bodily Harm*." It next describes how Gandy attacked his fellow inmate and caused him to suffer a variety of injuries, such as bruising and cuts around the face and head. At the conclusion of the statement of probable cause, the report again lists the charge as "battery causing bodily harm." The arrest report

13

never mentions "touching or striking" battery, nor does it cite the subsection for that type of battery. So the arrest report unambiguously identifies Gandy's offense as bodily harm battery. Because Gandy agreed to this description of his offense, he necessarily pleaded *nolo contendere* to bodily harm battery.

At oral argument, Gandy argued that we cannot rely on the statements identifying his offense as bodily harm battery because these statements are "legal conclusions." He argued that by agreeing to the police report as the factual basis of his plea, he only agreed to the report's "factual allegations." We disagree.

Florida law requires a factual basis for a plea to ensure "that the facts of the case fit the offense with which the defendant is charged." *Allen v. State*, 876 So. 2d 737, 740 (Fla. Dist. Ct. App. 2004) (citation omitted). Because a factual basis is used to compare the factual allegations with the elements of the offense of conviction, *see Williams v. State*, 316 So. 2d 267, 273 (Fla. 1975), a factual basis often includes both legal and factual elements so that the comparison between the two may be made explicit. Although we agree with Gandy that a factual basis consists primarily of factual information, *see Dydek v. State*, 400 So. 2d 1255, 1257 (Fla. Dist. Ct. App. 1981) (explaining that "the trial court must receive in the record *factual information* to establish the offense to which the defendant has entered his plea" (emphasis added)), we do not agree that a factual basis excludes all legal conclusions. Our review of Florida caselaw reveals that the factual bases

14

for guilty or *nolo* pleas often include legal descriptions of the elements or offenses that are established by the factual allegations. *See, e.g.*, *Johnson v. State*, 22 So. 3d 840, 843 (Fla. Dist. Ct. App. 2009) (explaining that prosecutor's statement of the factual basis for a plea, to which the defendant did not object, included the statement that at "some point between November 15, 2005, and November 27, 2005, Johnson knowingly conspired to sell, purchase, manufacture, deliver, or traffic four grams or more of oxycodone"); *Toson v. State*, 864 So. 2d 552, 554 (Fla. Dist. Ct. App. 2004) (including in the factual basis a statement that "the defendant did knowingly enter a dwelling . . . with the intent to commit an offense therein"); *Hayden v. State*, 833 So. 2d 275, 276 (Fla. Dist. Ct. App. 2002) (providing a factual basis for a defendant who pleaded *nolo contendere* to the offense of robbery with a firearm and a mask that included the statement that "[o]n December 22nd, Marcus Hayden and Dantrell Riley, with a gun and masks . . . committed a robbery"). And Gandy cites no authority supporting his restrictive view of what constitutes a factual basis under Florida law.

We conclude that because Gandy agreed to the arrest report as the factual basis of his plea without qualification, he agreed with the statements describing his offense as bodily-harm battery and that he necessarily pleaded *nolo contendere* to that offense. And our conclusion is consistent with that of the only other Circuit that has addressed whether a defendant's agreement to a police report as a factual

15

basis includes his agreement to the report's description of his offense. *See United States v. Almazan-Becerra*, 537 F.3d 1094, 1096, 1099 (9th Cir. 2008) (explaining that where police reports were incorporated as the factual basis of the defendant's plea and described the offense as "sales of marijuana," it established that a defendant who had pleaded guilty to a disjunctive indictment was necessarily convicted of the sale of marijuana as opposed to mere transportation of marijuana).

Gandy argues that we cannot conclude that he was convicted of bodily harm battery in the absence of an amendment to the charging document that narrows the elements of his conviction, but we disagree. What matters under the modified categorical approach is not the offense charged, but what elements the government proved or the defendant admitted committing. Although a charging document is one possible *Shepard* document that we may consult, it is not the only document. When a charging document contains multiple alternative elements from the same divisible statute and the judgment does not specify which elements were proved or admitted, we may still determine the elements by consulting other *Shepard* documents. For example, in *Diaz-Calderon*, the defendant pleaded *nolo contendere* to an information charging that he "did intentionally touch *or* strike the victim against that person's will *or* did intentionally cause bodily harm to said person." 716 F.3d at 1348 (alteration adopted) (emphasis added). We determined the basis for the conviction by looking to the factual basis for the plea, which included arrest

16

affidavits, and the plea colloquy. *Id.* at 1349–50. Because the *Shepard* documents establish that Gandy admitted committing bodily-harm battery, we reject his argument.

Gandy also contends that we may not rely on the factual basis included in his sentence recommendation because, in entering his *nolo contendere* plea, he only "acknowledged that the evidence would be sufficient to support a judgment of conviction under Fla. Stat. § 784.03." But we have repeatedly explained that we treat Florida *nolo* convictions no differently than convictions based on guilty pleas or verdicts of guilt for purposes of the Sentencing Guidelines. *See Green II*, 873 F.3d at 860 (collecting decisions); *see also United States v. Drayton*, 113 F.3d 1191, 1193 (11th Cir. 1997) (holding that a Florida *nolo* conviction constitutes a prior conviction for purposes of the Armed Career Criminal Act). Gandy's argument that we may not consult the factual basis of his *nolo* plea has no merit.

Gandy also argues that we cannot rely on the factual basis in the arrest report because, absent a plea colloquy, we cannot determine either that the state court found a factual basis to support the *nolo contendere* plea or that it specifically relied on the factual basis as stated in the arrest report. As we understand it, Gandy's argument suggests that we cannot apply the modified categorical approach unless we have a plea colloquy, as there could always be some question about whether the elements of the conviction stated in a particular *Shepard*

17

document were actually relied upon by the court in accepting the plea. But a plea colloquy is only one of several *Shepard*-approved documents, and we are aware of no authority suggesting that the absence of a plea colloquy bars consideration of other *Shepard* documents.

Gandy also renews his argument from the district court that bodily-harm battery does not satisfy the definition of a crime of violence because one may cause bodily injury indirectly, such as by "digging a hole and putting a blanket over it or loosening someone's tires." This argument fails because we have held that "[w]hen a statute requires the use of force 'capable of causing physical pain or injury to another person,' whether that use of force 'occurs indirectly, rather than directly (as with a kick or punch), does not matter.'" *United States v. Deshazior*, 882 F.3d 1352, 1357 (11th Cir. 2018) (citation omitted) (quoting *United States v. Castleman*, 572 U.S. 157, 171 (2014)).

Gandy was convicted of battery of a jail detainee by intentionally causing bodily harm. His prior conviction constitutes a crime of violence under the Sentencing Guidelines. U.S.S.G. § 4B1.2(a)(1). So he has two qualifying predicate offenses for purposes of his career-offender designation. U.S.S.G. § 4B1.1(a).

## IV. CONCLUSION

We **AFFIRM** Gandy's sentence.

18

ROSENBAUM, Circuit Judge, dissenting:

I agree with the panel that Fla. Stat § 784.03 is divisible into two separate offenses—one of which qualifies as a violent felony for purposes of the sentencing guidelines (the "bodily-harm" provision) [1] and one of which does not (the "touch-or-strike" provision)[2]. I also agree that the fact that Clifford Gandy Jr.'s plea was one of *nolo contendere* does not change the analysis in this case and that the district court was entitled to look to the arrest report to determine the offense of conviction

---

[1] The panel opinion concludes that bodily-harm battery is "necessarily" a crime of violence, though it notes that "under Florida law, bodily harm is broadly defined to encompass any 'slight, trivial, or moderate harm' to a victim." Maj. Op. at 11. I agree that the injuries described in the two panel-opinion-cited Florida cases interpreting this definition—bruises in one and scratches, swelling, and puncture marks in the other—required the "use . . . of physical force" as anticipated by the Supreme Court's interpretation of the elements clause. What is not clear to me after reviewing Florida law is the bottom end of the spectrum of "bodily injury"—that is, what is the most "trivial" or "slight" impact that still counts as "harm" so that it satisfies the definition of "bodily injury"? But because I conclude that we cannot "necessarily" determine that the Florida court convicted Gandy of bodily-harm battery, anyway, I do not opine on whether bodily-harm battery is categorically a crime of violence. My dissent therefore assumes without deciding that it is.

[2] The panel opinion does not decide whether touch-or-strike battery is itself divisible. Under the methodology of *Mathis v. United States*, 136 S. Ct. 2243, 2256-57 (2016), however, touch-or-strike battery is not divisible. Touching and striking constitute alternative means—not alternative elements—of the crime. Under *Mathis*, we may ascertain whether striking and touching are alternative elements or alternative means by looking to Florida law identifying the elements of Fla. Stat. § 784.03(1)(a)(1). *See Mathis*, 136 S. Ct. at 2256. In *Khianthalat v. State*, 974 So. 2d 359, 361 (Fla. 2008), the Florida Supreme Court set forth the elements of simple battery under § 784.03(a)(1)(a) as "(1) actually and intentionally touching or striking another person; and (2) [doing so] against the will of the other person." Florida's jury instructions for this crime likewise require the jury to determine whether each of these elements has been satisfied. *See* Fla. Jury Instruction 8.3 Battery. Because "touching" and "striking" are listed in the alternative as part of a single element of the crime, they constitute alternative means—not alternative elements—under *Mathis*. *See Mathis*, 136 S. Ct. at 2256-57. As a result, touch-or-strike battery is not divisible.

19

because the report was incorporated by reference into Gandy's sentence recommendation "as a factual basis."

But I dissent from the panel's application of the modified categorical approach. The panel incorrectly applies the modified categorical approach, creating a circuit split in the process. As a result, the panel mistakenly concludes that Gandy's prior conviction for violating § 784.03 was "necessarily" for bodily-harm battery. Since a correct application of the modified categorical approach does not allow us to identify which offense defined in § 784.03 Gandy was "necessarily" convicted of committing, I would vacate the sentence and remand for resentencing.

**I.**

I begin by reviewing the categorical and modified categorical analyses.

As the "first step" of determining whether a defendant's prior conviction qualifies as a "crime of violence" under the Sentencing Guidelines, we apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014). Using that method, we "look no further than the statute and judgment of conviction" and ask whether, "on its face," the statute of conviction "requires the government to establish, beyond a reasonable doubt and without exception, an element involving the use, attempted use, or threatened use of physical force against a person for every charge brought under the statute." *Estrella*, 758 F.3d at 1244; *accord United States v. Howard*, 742

20

F.3d 1334, 1345 (11th Cir. 2014); *Donawa v. United States Attorney General*, 735 F.3d 1275, 1281 (11th Cir. 2013). If so, then the conviction "*necessarily*," *Estrella*, 758 F.3d at 1245 (citation and quotation marks omitted), indicates that the defendant committed an element that involves the "use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a).

Here, the categorical approach does not reveal whether Gandy was "necessarily" convicted of a crime that includes as an element the "use, attempted use, or threatened use of physical force against the person of another." As the panel accurately points out, Gandy's judgment reveals only that he was convicted of violating Fla. Stat. § 784.03, which is not categorically a crime of violence. Rather, § 784.03 has two subsections possibly applicable here—one that is not categorically a crime of violence (§ 784.03(1)(a)(1), which makes it a crime to "[a]ctually and intentionally touch[] or strike[] another person against the will of the other"), *Curtis Johnson v. United States*, 599 U.S. 133, 139 (2010), and one that is (§ 784.03(1)(a)(2), which makes it a crime to "[i]ntentionally cause[] bodily harm to another person"). Because § 784.03 is divisible into one crime that qualifies as a crime of violence and another that does not, the categorical approach cannot help us deduce whether Gandy's conviction under § 784.03 was necessarily for a crime of violence.

We therefore must turn to the modified categorical approach to help us identify, if possible, whether Gandy was convicted of the touch-or-strike provision or the bodily-harm provision. *Estrella*, 758 F.3d at 1245. Under the modified categorical approach, we "look to the fact of conviction and the statutory definition of the prior offense, as well as any charging paper and jury instructions" to shed light on what specific offense of a divisible statute the defendant was convicted of. *Id.* (citation and quotation marks omitted). The documents we use for this purpose are often referred to as "*Shepard*" documents. *See Shepard v. United States*, 544 U.S. 13 (2005).

Critically, and as the Supreme Court has repeatedly emphasized, courts may use the modified categorical approach to determine only "'which statutory phrase was the basis for the *conviction*.'" *Descamps v. United States*, 570 U.S. 254, 263 (2013) (emphasis added) (quoting *Curtis Johnson*, 599 U.S. at 144); *see also Taylor*, 495 U.S. at 602; *Shepard*, 544 U.S. at 26. We have previously followed this directive when holding that courts may use *Shepard* documents for only the limited purpose of determining "'what crime, with what elements, a defendant was *convicted* of.'" *United States v. Gundy*, 842 F.3d 1156, 1168 (11th Cir. 2016) (emphasis added) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2245 (2016)). It naturally follows that a court "must not . . . consult those documents 'to discover what the defendant actually did.'" *Howard*, 742 F.3d at 1347 (quoting *Descamps*, 570 U.S. at 268).

22

Significantly, the modified categorical approach "preserves the categorical approach's basic method," *Descamps*, 570 U.S. at 263, since the sentencing court ultimately asks whether the records of the defendant's prior case show that, though convicted of a divisible statute, he was "*necessarily convicted*" of a particular provision within that divisible statute that is a crime of violence. *Choizilme v. United States Attorney General*, 886 F.3d 1016, 1023 (11th Cir. 2018) (emphasis added) (citing *Mathis*, 136 S. Ct. at 2249). So we have held that the modified categorical approach requires us to first determine "'which statutory phrase the defendant was *necessarily convicted* under,'" and if we can do so, to then ask whether that statutory provision defined a crime of violence, using the categorical approach. *United States v. Davis*, 875 F.3d 592, 598 (11th Cir. 2017) (emphasis added) (quoting *Howard*, 742 F.3d at 1345).

On the record here, as shown in the next section, the *Shepard* documents do not allow us to conclude that Gandy was "necessarily convicted under" a particular statutory phrase within § 784.03. For that reason, the panel opinion's determination that Gandy was "necessarily convicted" of bodily-harm battery is incorrect.

## II.

In concluding Gandy was "necessarily convicted" of bodily-harm battery and affirming Gandy's sentence, the panel relies on the arrest report in two ways that the modified categorical approach does not permit, even though the report was

23

incorporated "as a factual basis" for the plea.  First, the panel opinion appears to contend that where, as here, the factual basis for an offense satisfies the elements of both a qualifying offense and a non-qualifying offense, the district court is entitled to conclude that the defendant was "necessarily" convicted of the qualifying offense. Maj Op. at 14.  And second, the panel opinion seems to conclude that the officer's legal conclusion that Gandy committed bodily-harm battery, which appears in the arrest report, means that Gandy was "necessarily" convicted of that offense.[3]  Maj Op. at 13–14.

The panel opinion's first apparent contention contravenes the Supreme Court's "demand for certainty" in determining a defendant's prior offense of conviction.  *Shepard*, 544 U.S. at 21.  It also conflicts with the Eighth Circuit's well-reasoned decision in *United States v. Horse Looking*, 828 F.3d 744 (8th Cir. 2016), creating a circuit split on that issue.  And its second apparent contention is inconsistent with fundamental principles of criminal procedure.

## A.

I begin with the panel opinion's apparent contention that, since the factual basis for Gandy's plea would have satisfied the elements of both bodily-harm battery and touch-or-strike battery, the district court was entitled to conclude that Gandy's

---

[3] The officer's actual statement was "Gandy . . . did knowingly and intentionally commit the offense of Battery Causing Bodily Harm, as follows," which preceded a description of the particular facts demonstrating that Gandy's actions, in fact, satisfied the element of that crime.

24

conviction must have been for bodily-harm battery.  We have not previously considered whether a factual basis that satisfies the elements of two crimes—one that qualifies as a crime of violence and one that does not—suffices to show that a defendant charged in the alternative with both crimes was "necessarily" convicted of the qualifying crime.  But the Eighth Circuit has.  And in *United States v. Horse Looking*, 828 F.3d 744 (8th Cir. 2016), a well-reasoned opinion in a case materially indistinguishable from the one here, that court found that such a factual basis does not—the opposite of today's panel opinion's conclusion.

In *Horse Looking*, the defendant was charged with possessing a firearm after having been previously convicted of a "misdemeanor crime of domestic violence." The applicable statute, in turn, defines that term as a crime that, as relevant here, has as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon."  828 F.3d at 746; *see* 18 U.S.C. §§ 921(a)(33)(A)(ii), 922(g)(9). On appeal to the Eighth Circuit, Horse Looking argued that the court should vacate his conviction and dismiss the indictment because the predicate conviction in his case, which was for South Dakota simple assault domestic violence, was not a "misdemeanor crime of domestic violence" as defined by federal law.  *Horse Looking*, 828 F.3d at 746.

As it turned out, the South Dakota simple-assault-domestic-violence statute contained five divisible provisions, and Horse Looking was charged with three of

25

them. *Id.* As relevant here, Horse Looking's underlying South Dakota indictment alleged that Horse Looking "(4) [a]ttempt[ed] by physical menace or credible threat to put another in fear of imminent bodily harm, with or without the actual ability to harm the other person," or "(5) [i]ntentionally cause[d] bodily injury to another which does not result in serious bodily injury." *Id.*; *see* S.D. Codified Laws § 22-18-1. Before the Eighth Circuit, the parties agreed that a conviction under subsection (5) of the South Dakota statute met the federal definition of a "misdemeanor crime of domestic violence" and that a conviction under subsection (4) did not. *Id.* at 747.

Applying the modified categorical approach, the court looked to the South Dakota charging and sentencing documents to determine whether Horse Looking had been convicted of subsection (4) or (5), or both. *Id.* at 747. But those documents revealed only a conviction for violating the statute as a whole, without identifying any particular subsection of conviction. *Id.*

Continuing with the modified categorical approach, the Eighth Circuit next examined the plea colloquy in Horse Looking's South Dakota case. In that colloquy, Horse Looking had said that he and his wife "got into an argument and she became physical and she cut me and I pushed her." *Id.* at 748. Horse Looking further explained that when he "pushed" his wife, "she fell down." *Id.* Finally, Horse Looking's attorney volunteered that Horse Looking's wife had "testified that she had some abrasions on her ankle or knee." *Id.*

26

Based on this factual recitation, the Eighth Circuit concluded that the colloquy "establishe[d] that Horse Looking *could have been* convicted under subsection (5)," which was a misdemeanor crime of domestic violence. *Id.* at 748 (emphasis in original). "But," the court continued, "the colloquy does not exclude the possibility that Horse Looking was convicted under subsection (4)," which was not a misdemeanor crime of violence. *Id.* at 748. And since the court also could not "say that convictions under the two alternatives are mutually exclusive," it acknowledged it could not determine that the factual basis for Horse Looking's plea necessarily excluded one of the subsections of the statute as the offense of his conviction. *Id.*

So the court concluded that "the judicial record d[id] not establish that Horse Looking necessarily *was convicted* of" the qualifying part of the South Dakota statute. *Id.* at 749. Ultimately, then, because "*the state court* did not specify which alternative was the *basis for conviction*," the Eighth Circuit determined that the government could not establish that Horse Looking had been convicted of a "misdemeanor crime of domestic violence." *Id.* (emphasis added). That Horse Looking "*could have*" been convicted of a qualifying offense, the court said, did not meet the Supreme Court's repeated "'demand for certainty'" when it came to determining whether a defendant had, in fact, been previously convicted of a qualifying predicate offense. *Id.* at 748-49 (quoting *Mathis*, 136 S. Ct. at 2256-57; citing *Descamps*, 570 U.S. at 272; *Shepard*, 544 U.S. at 21; *Taylor*, 495 U.S. at 602).

27

Gandy's case presents the same problem, and we should have resolved it in the same way. Here, as in *Horse Looking*, the judgment and sentencing documents indicate that Gandy was convicted of a general offense, without specifying which particular subsection of that general offense is the offense of conviction. And like Horse Looking, Gandy pled guilty to a charging instrument that contained both qualifying and non-qualifying offenses. Also like Horse Looking, Gandy admitted to conduct that satisfied the elements of both the qualifying offense and the non-qualifying offense. Neither the South Dakota court in Horse Looking's case nor the Florida court in Gandy's case specified whether the defendant's case was for the qualifying subsection or the non-qualifying subsection. And finally, just as was the case with the factual recitation in *Horse Looking*, the statement of Gandy's actions contained in the arrest report does not exclude the possibility that Gandy committed one of the two crimes ultimately charged in the alternative. So like the Eighth Circuit, we should have concluded that Gandy's past conviction was not "necessarily" for a qualifying offense.

Indeed, the Eighth Circuit did exactly what Supreme Court precedent requires in applying the modified categorical approach. Unfortunately, though, today we do

28

not.[4]  And as a result, we arrive at the incorrect answer and create a circuit split in the process.

## B.

Nor, as the panel opinion seems to suggest, can we find the answer to our dilemma by relying on the officer's arrest-report legal conclusion that Gandy committed bodily-harm battery, which he offered to identify his legal authority to make the arrest.  It's not that we can't consult the arrest report to help us ascertain the factual basis for Gandy's crime of conviction;  we can, since Gandy agreed that the arrest report provided a "factual basis" for his plea.  But to paraphrase Inigo Montoya in *The Princess Bride*, I do not think the presence of the officer's statement in the arrest report means what the panel opinion thinks it means.[5]  *See Mandy Patinkin:  Inigo Montoya*, IMDb.com, https://www.imdb.com/title/tt0093779/characters/nm0001597 (last visited Mar. 5, 2019).  This is so for two independent reasons:  (1) an officer's statement in his arrest report providing a legal conclusion of the offense for which he is arresting a person is not a part of the "factual basis"

---

[4] I can appreciate the Eighth Circuit's concern that the "absence of definitive records frustrates the application of the modified categorical approach."  *Id.* at 749.  But as the Eighth Circuit nonetheless correctly observed, "the Supreme Court has made clear that the vagaries of state court recordkeeping do not justify a different analysis."  *Id.* (citing *Johnson*, 559 U.S. at 145; *Shepard*, 544 U.S. at 22-23).

[5] Montoya's actual quotation, which he offers in response to the character Vizzini's repeated invocation of the word "inconceivable," is "You keep using that word.  I do not think it means what you think it means."  *Mandy Patinkin:  Inigo Montoya*, IMDb.com, https://www.imdb.com/title/tt0093779/characters/nm0001597 (last visited Mar. 5, 2019).

29

demonstrating that the defendant, in fact, pled guilty to that particular crime, even when the arrest report is adopted "as a factual basis" for the guilty plea; and (2) only the court, not the arresting officer, has the power to adjudicate a defendant convicted of a crime.

To explain why, I review the purpose of the arresting officer's report in the context of the plea proceeding in Gandy's Florida case. The arresting officer's report was incorporated by reference to the sentence recommendation only "as a factual basis" for Gandy's plea. And the report contained both statements of fact—reporting the actions Gandy took that resulted in his arrest—and the officer's statement of the crime he decided to arrest Gandy for—bodily-harm battery. But the arresting officer's statement of the crime he arrested Gandy for was not a part of the "factual basis" for Gandy's plea. Rather, it served only the purpose of identifying the crime for which the officer arrested Gandy.

To understand the impact of the arrest report's limited purpose, we must consider the role of the "factual basis." Florida Rule of Criminal Procedure 3.170 requires a court to determine that, among other things, a "factual basis for the plea" exists before the court may accept a plea. Satisfying this requirement demands the court "ensure that the facts of the case fit the offense with which the defendant is charged." *Williams v. State*, 316 So. 2d 267, 271 (Fla. 1975). So merely repeating that the defendant committed a particular crime or saying that the defendant

30

committed a specific element of a given crime does not accomplish this task. Rather, the "factual basis" must provide the "factual information necessary to establish the elements of the offense." *Id.* at 273.

In applying these concepts, we start with "the offense with which [Gandy] [was] charged." *Id.* at 271. Here, Gandy was charged in the alternative with having committed bodily-harm battery *or* touch-or-strike battery.

Two elements compose touch-or-strike battery: "(1) actually and intentionally touching or striking another person; and (2) [doing so] against the will of the other person." *Khianthalat v. State*, 974 So. 2d 359, 361 (Fla. 2008). Among others, the following facts from the arrest report established the two elements of touch-or-strike battery: a video recording showed that Gandy "walk[ed] up behind [the victim] and unprovokedly struck [the victim] in the face which caused [the victim] to fall down to the ground. [Gandy] then continued to strike [the victim] multiple times in the head." The report further memorialized the victim's statement that he "wished to pursue criminal charges" against Gandy.

As for bodily-harm battery, a single element—that the defendant "intentionally caused bodily harm" to the victim—comprises that crime. *See* Fla. Jury Instruction 8.3 Battery. And along with the arrest report's recounting of the specific injuries the victim incurred as a result of Gandy's actions, the same facts from the arrest report that showed Gandy undertook actions that meet the elements

31

of touch-or-strike battery likewise demonstrated that Gandy engaged in actions that check off bodily-harm battery's single element.

So the facts in the arrest report establishing that Gandy undertook actions that specifically satisfied the elements of each charged crime comprise the "factual basis" for Gandy's plea;  they showed the particular actions Gandy committed that supported the conclusions that he "actually and intentionally touch[ed] or str[uck] another person," "against the will of the other person" and that he "intentionally caused bodily harm" to the victim.  They did not simply restate an element of a particular crime or the crime for which Gandy was arrested.

By contrast, the officer's legal conclusion that Gandy intentionally caused bodily harm to another did no more than restate a crime.  It did not "provide the factual information necessary to establish the elements of the offense."  *Williams*, 316 So. 2d at 273.  And since it did not do so, it did not serve as part of the factual basis for Gandy's plea.

Nor do the Florida cases cited in the panel's decision support its position that legal conclusions may properly be part of the factual basis for a Florida guilty plea. *See* Maj. Op. at 14–15 (citing *Johnson v. State*, 22 So. 3d 840 (Fla. Dist. Ct. App. 2009); *Toson v. State*, 864 So. 2d 552 (Fla. Dist. Ct. App. 2004); *Hayden v. State*, 833 So. 2d 275 (Fla. Dist. Ct. App. 2002)).  Critically, the sufficiency of the factual

32

bases for the guilty pleas of the defendants in those cases was not at issue.[6]  So those cases can shed no light on whether legal conclusions constitute part of the "factual basis" for a defendant's guilty plea.  *Cf. United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37-38 (1952) (noting that where a particular issue was neither raised in the briefs or argument nor discussed in the opinion of the Court, the case could not serve as binding precedent on the particular point).

*United States v. Almazan-Becerra*, 537 F.3d 1094 (9th Cir. 2008) ("*Almazan-Becerra II*"), similarly does not help the panel opinion, as the panel's reliance on it rests on another Inigo Montoya type of misunderstanding.  The panel cites *Almazan-Becerra* for the notion that "a defendant's agreement to a police report as a factual basis includes his agreement to the report's description of the offense," by which the panel opinion means the arresting officer's statement of the offense for which the defendant is arrested.  Maj. Op. at 16.  But *Almazan-Becerra* did not use the word

---

[6] Rather, in *Johnson*, the appellant sought to withdraw her guilty plea because she claimed that she did not understand the consequences of the plea agreement and that she was coerced into pleading guilty.  *See* 22 So. 3d at 843.  And in *Toson*, the appellant raised the legal argument that it was fundamental error for him to have been convicted of both dealing in stolen property and grand theft where the conduct involved the stealing of the same property during the same scheme or course of conduct, since Fla. Stat. § 812.025 "expressly prohibits a trial court from adjudicating a defendant guilty of theft and dealing in stolen property in connection with one scheme or course of conduct."  864 So. 2d at 555.  Finally, in *Hayden*, the appellant asserted that the state trial court erred in sentencing him to a ten-year minimum mandatory term under Fla. Stat. § 775.087(2)(a)(i) because the State's charging document failed to allege that he personally possessed a firearm during the commission of the felony, and Florida courts have held that the State must plead and prove that the defendant had actual physical possession of the firearm during the commission of the felony before the court can impose the § 775.087(2) minimum mandatory sentence.  833 So. 2d at 277.  In short, none of these appeals in any way challenged the sufficiency of the factual bases supporting the underlying guilty pleas.

33

"describe" in the way that the panel opinion seems to think it did. Rather, it used that word to refer collectively to the specific facts concerning Almazan-Becerra's actions that the reports at issue in that case documented.

In *Almazan-Becerra*, the federal court had to determine whether Almazan-Becerra had previously been convicted of a drug-trafficking crime to ascertain whether a sentencing enhancement applied to him. *See Almazan-Becerra*, 537 F.3d at 1095. The state complaint to which Almazan-Becerra had pled guilty, as relevant here, charged in the alternative sale or transport of marijuana, under the same general statute. *See United States v. Almazan-Becerra*, 482 F.3d 1085, 1089 (9th Cir. 2007) ("*Almazan-Becerra I*"). Sale of marijuana was a drug-trafficking offense, while transport was not. *See Almazan-Becerra II*, 537 F.3d at 1099.

But since Almazan-Becerra stipulated as a factual basis for his plea to the police reports concerning his arrest, the court considered the contents of the reports to see whether they could resolve whether Almazan-Becerra had been convicted of sale or transport of marijuana. *Id.* at 1099 & 1099 n.2. In so doing, it said that "the police reports unequivocally describe Almazan-Becerra's offensive conduct as selling marijuana . . . ." *Id.* at 1099. But the court simultaneously expressly "reject[ed]" Almazan-Becerra's contention that the police reports also "*describe[d]* the offense of transporting marijuana . . . because the reports state that the police found a bindle of marijuana on the ground where Almazan-Becerra had previously

34

been walking." *Id.* at 1099 n.2 (emphasis added). Rather, the court explained, "[W]hen read as a whole, [the reports] *describe* only one type of offense—selling marijuana. The bindle found on the ground was simply one of several pieces of evidence of that offense." *Id.* (emphasis added).

So contrary to the panel opinion's suggestion, the Ninth Circuit's explanation for why the reports could not also "describe the offense of transporting marijuana" shows that it did not employ that phrase to refer to an officer's statement of the offense for which he arrested the defendant, but rather to the defendant's specific actions documented in the reports. *See id.* at 1099 n.2. Put another way, the Ninth Circuit effectively determined that the particular actions memorialized in the police reports could, in good faith, support only the charge of sale.

But even not considering the principle that an officer's statement identifying the crime for which he arrests a person cannot constitute a part of the "factual basis," a second reason also compels the determination that we cannot view the arresting officer's legal conclusion as dispositive. While the arresting officer may have accurately stated the crime for which he arrested Gandy, the officer was not responsible for Gandy's prosecution. That was up to the State Attorney. *See* Fla. Stat. § 932.47. It was the State Attorney who selected the charge against him. *See id.* And once the State Attorney charged Gandy, only the court could adjudicate Gandy guilty of that charge. Fla. R. Crim. P. 3.170.

35

The following hypothetical illustrates this point more bluntly:

Suppose that the victim in Gandy's case tragically suffered permanent brain damage when Gandy hit him. Florida courts have held such an injury constitutes "great bodily harm," an element of aggravated battery. Fla. Stat. § 784.045; *see* *Montero v. State*, 225 So. 3d 340, 343 (Fla. Dist. Ct. App. 2017). Under our hypothetical, suppose the officer arrested Gandy for aggravated battery, opining in his arrest report that Gandy "did commit the offense of Aggravated Battery Causing Great Bodily Harm, as follows," before setting forth the specific facts supporting Gandy's arrest for that crime. Then suppose that the prosecutor decided to charge only touch-or-strike battery or bodily-harm battery under Fla. Stat. § 784.03—just like here—and she did not charge aggravated battery, in violation of Fla. Stat. § 784.045. Finally, suppose that, just like here, Gandy pled guilty to the charged crime and that the court adjudicated him guilty of it.

Under the circumstances of that hypothetical, could a later sentencing court correctly surmise that Gandy's conviction was "necessarily" for aggravated battery?

Inconceivable![7]

The officer's statement that Gandy committed the crime for which he was arrested could not define the offense *of conviction*. Only the court could do that

---

[7] To be clear, "inconceivable" means exactly what I think it means: "Impossible to comprehend or grasp fully," or, "[s]o unlikely or surprising as to have been thought impossible; unbelievable." *Inconceivable*, The American Heritage Dictionary (5th ed. 2011).

36

because only the court had the power to adjudicate Gandy guilty and enter a judgment of conviction on the charge. Under this hypothetical scenario, the court identified Fla. Stat. § 784.03—not Fla. Stat. § 784.045—as the statute of conviction. And the factual basis for Gandy's plea, with its limited purpose, could not alter the court's judgment and somehow render Gandy convicted of § 784.045, even though the court relied on the arresting officer's report as a factual basis for Gandy's plea. So even assuming that the officer's opinion were a part of the factual basis for Gandy's plea, it could not have shed any light on which offense the *Florida court* convicted Gandy of.

That principle—that the court, not the arresting officer, adjudicates guilt—applies equally to the case before us. The officer's conclusion that Gandy committed bodily-harm battery, and his decision to arrest him on that basis, cannot demonstrate that the *Florida court* convicted Gandy of that particular offense. Only the Florida court had the authority to determine the crime of Gandy's conviction. And here, we cannot ascertain the crime for which the Florida court convicted Gandy, since the information charged two crimes in the alternative, the factual basis for the plea satisfied the elements of both offenses, and the Florida court's judgment reflected only that Gandy was convicted of the general crime of battery under § 784.03.

To find otherwise would undermine the role of the Florida courts in adjudicating defendants guilty of Florida crimes. Only the Florida court can

37

determine the offense of conviction. But the panel opinion's reliance, for the purpose of identifying Gandy's crime of conviction, on the arresting officer's legal conclusion that Gandy committed the offense of bodily-harm battery steals that role from the Florida court and gives it to the arresting officer. That is not something we should be doing.

We are concerned only with what the Florida court convicted Gandy of. And on this record, we are bound to conclude that the Florida court did not "necessarily" convict him of a crime of violence. While it may be tempting to jump to the conclusion that Gandy was convicted of bodily-harm battery based on the officer's legal conclusion in his report, we are not authorized to modify a Florida court's judgment of conviction.

## III.

For these reasons, I respectfully dissent. In my view, when we apply the modified categorical approach, Gandy's prior conviction for violating Fla. Stat. § 784.03 does not qualify as a crime of violence, so the district court incorrectly sentenced him as a career offender.

38